Robert Lewis ROCKETT *v.* STATE of Arkansas

CR 94-510                    890 S.W.2d 235

Supreme Court of Arkansas
Opinion delivered December 5, 1994

*William R. Simpson, Jr.*, Public Defender, by: *C. Joseph Cordi, Jr.*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

Tom Glaze, Justice. This is an appeal from appellant Robert Rockett's conviction of capital murder and aggravated robbery for which he was sentenced to life without parole. Rockett brings this appeal and raises the following four points for reversal: (1) the trial court erred by denying Rockett's motion to suppress evidence; (2) the trial court erred when it allowed into evidence Rockett's uncounseled statements after he invoked his right to have an attorney present during questioning; (3) the trial court's finding that the state offered a racially neutral reason to strike a prospective juror was clearly against the preponderance of the evidence; (4) the trial court erred by not allowing Rockett to produce evidence that someone else had confessed to the homicide. We affirm.

On March 10, 1993, at approximately 10:30 p.m., three women were adding oil to their car at the Stax convenience store in Jacksonville when two of the women witnessed a car occupied by two men enter the parking lot and stop behind the women's car. The driver was seen to exit his car, look toward the store, and then re-enter his car. He retrieved a ski mask, pulled it over his head and again exited the car. The man forced the three women into the store, and once inside, he demanded the clerk, Stacie Summers, to put money in a sack. He then shot Ms. Summers in the throat and fled. Ms. Summers dialed 911, and members of the Jacksonville Police Department arrived shortly thereafter. Efforts to save Ms. Summers' life were unsuccessful.

Fifteen days after the Jacksonville crimes, a police officer in Jonesboro discovered a stolen car parked in the Motel 6 parking lot. The officer, Greg Baugh, called for backup, exited his vehicle, and hid under an outside stairway of the motel.

After a period of time, Baugh saw in the window of his patrol car three or four reflections of individuals walking in a normal fashion on the balcony above him. When the individuals

were in a position to see the patrol car, they stopped, began to whisper and continued quietly along the second floor balcony. When they reached a room, all entered except for one man.

Officer Baugh stepped out from hiding, and asked the man to step down and speak with him. The man stated that he would go inside and get his shoes and then come down to talk. Baugh insisted the man come down immediately, and the man became nervous and reached into his pockets a couple of times. The officer, fearing the suspect might be reaching for a weapon, drew his own weapon and pointed it at the suspect, who then fled. Officer Baugh, believing he could not catch the man, ran up the stairs to room 221 where the other individuals had entered. He found the door open and three people were sitting inside. At gunpoint, Baugh arrested the three individuals, and a search of one of the individuals revealed a loaded .380 clip. Other officers arrived and the room was searched, producing a motel receipt indicating Robert Rockett had paid for the room and a map. The search of the room where the subjects were arrested revealed two handguns, three pairs of gloves, ammunition, and a ski mask. Another ski mask was later discovered in the search of the stolen vehicle.

Approximately two hours after Officer Baugh's initial arrival, the man, who fled the scene, returned to the motel; the man was arrested and identified as Robert Rockett. The next day he was transported to Jacksonville as a suspect in the Jacksonville murder of Stacie Summers.

On March 27, Janice Blanchard, one of the women who witnessed the Stax robbery and Summers' murder, identified Rockett from a photo spread as the man who committed those crimes. Later that same day, Rockett allegedly confessed to a Jacksonville police officer. The state subsequently charged Rockett with the Jacksonville robbery and murder crimes with which he was convicted.

On appeal, Rockett first argues the trial court erroneously denied his motion to suppress the items the police officers recovered from Rockett's motel room in the Jonesboro search, seizures and arrests. He claims that search violated his fourth amendment rights, and the evidence seized was inadmissible at his murder and robbery trial.

It is well settled that one registered at a motel or hotel as a guest is protected against unreasonable searches and seizures by the fourth amendment to the United States Constitution. *Scroggins* v. *State*, 276 Ark. 177, 633 S.W.2d 33 (1982). Here, the record reflects that the three men who were arrested and the items that were seized were in room 221. The motel clerk stated that a Robert Rockett was the one registered to room 221, and a receipt was found in that room, reflecting Rockett had paid for the room. Given these circumstances, it was the state's burden to prove that Rockett's motel room was not subject to constitutional protection. *Id.* In this respect, the state argues Rockett abandoned any expectation of privacy he may have had when he fled from Officer Baugh.

In *State* v. *Tucker*, 268 Ark. 427, 597 S.W.2d 584 (1980), this court stated that abandonment is a fact question generally determined by a combination of acts and intent. The *Tucker* court, quoting from *U. S.* v. *Colbert*, 474 F.2d 174 (5th Cir. 1973), explained abandonment in these matters as follows:

> The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. *See also Abel* v. *United States*, 362 U.S. 217 (1960).

While the evidence reflects Rockett may well have had a fourth amendment protectable interest in room 221, it also shows he abandoned any such interest. Rockett was stopped by Officer Baugh and was not free to leave. He asked to go get his shoes, and when his request was denied, he fled from both Baugh and the motel. At this point, Rockett had abandoned not only his associates, but also any interest he may have had in room 221. Rockett argues that he did return to the motel within two hours, and apparently asked to get into the room. However, he told the officers that his mother had just dropped him off, and he was staying in room 219. The officers checked with motel personnel and determined someone else, not Rockett, occupied room 219. In sum, Rockett fled the motel when stopped by Officer Baugh, and upon his return two hours later, he claimed he occupied another room. Obviously, Rockett's actions exhibited that, by

fleeing and later telling authorities he occupied room 219, he wished to separate himself from room 221 and not reclaim any interest in it. Accordingly, Rockett abandoned any legitimate expectation of privacy he might have had in room 221 where his associates were arrested and certain items were seized.

■ Because we hold Rockett had no standing to challenge the motel search or the items seized and admitted into evidence at his trial, we need not address the probable cause and exigent circumstances issues he argues in this appeal. Nonetheless, we conclude that, even if the trial court had erred in admitting those items, it would not have constituted reversible error. Testimony at trial revealed that neither of the two guns retrieved from the Jonesboro motel room had been used in the killing of Stacie Summers. Nor was there testimony indicating Rockett had worn gloves at the Stax store robbery and murder. Although a ski mask similar to the one worn at the Stax store was found in motel room 221, another similar ski mask had been legally seized from the stolen vehicle at the Motel 6. In sum, the evidence obtained from the motel search was not directly connected to the state's case against Rockett and, even if error had occurred in its having been admitted into evidence, no harm occurred.

■■ When the evidence of guilt is overwhelming and the error is slight, we can declare that the error was harmless and affirm. *Greene* v. *State*, 317 Ark. 350, 878 S.W.2d 384 (1994). The items from the motel room did not affect the verdict of guilt as the overwhelming evidence of capital murder that was the basis in determining Rockett's guilt was the following: (1) eyewitness trial testimony reflecting in-court and out-of-court identification of Rockett as the man who donned a ski mask, and the one who forced three women into the Stax store before robbing and killing Ms. Summers; (2) trial testimony by Antonia Kennedy (the sister of Rockett's girlfriend) revealing that Rockett had confessed to her about the events and killing at the Stax store; and (3) testimony from Detective Smiley of the Jacksonville Police Department recounting Rockett's detailed statement of what transpired that evening at the Stax store, including the statement that he did not mean to kill the store clerk. In light of the overwhelming evidence of guilt and the consequential lack of prejudice caused by the introduction of the motel evidence, the error was slight and harmless.

Next, Rockett argues that his uncounseled custodial statement, after he invoked his right to have an attorney present during questioning, was erroneously accepted into evidence. However, after invoking the right of counsel or to remain silent, an accused person may initiate contact with law enforcement and waive those constitutional rights. *Bussard* v. *State*, 295 Ark. 72, 747 S.W.2d 71 (1988). The trial court held that the interview with Detective Smiley was initiated by Rockett knowingly, intelligently and voluntarily, therefore was not contrary to *Miranda*. On appeal, whether or not such initiation and waiver has taken place is determined from the totality of the circumstances, taking the evidence in a light most favorable to the state and the trial court's determination will not be reversed unless it is clearly against the preponderance of the evidence. *Piercefield* v. *State*, 316 Ark. 128, 871 S.W.2d 348 (1994).

Here, we hold the record supports the trial court's ruling admitting Rockett's statement. Detective Smiley testified that Jazmar Kennedy, Rockett's girlfriend, came to the jail to visit Rockett. Smiley admitted that he told Ms. Kennedy that maybe if Rockett showed some remorse the jury might give him life instead of the death penalty. After visiting with Rockett, Ms. Kennedy told Detective Smiley that Rockett wanted to talk to him. Although Detective Smiley knew that Rockett had an attorney at this point, he agreed to hear what Rockett had to say. He introduced himself to Rockett and asked if he had wanted to talk. Rockett responded in the affirmative. The two went to another room, and before Smiley said anything, Rockett said that he did not mean to kill the clerk and began to tell the whole story. Detective Smiley interrupted, Rockett's rights were read and a *Miranda* form was completed, and Rockett gave a complete confession of the events at the Stax store. Both Rockett and his girlfriend denied that Rockett requested to speak to Smiley. However, it is for the trial court to decide questions of credibility and conflicts in testimony, and we will not reverse unless the decision is clearly erroneous. *Everett* v. *State*, 316 Ark. 213, 871 S.W.2d 568 (1994). Having reviewed the record, we are satisfied that the trial court's decision was not clearly erroneous, and we affirm.

Next, juror James, the first black person questioned during the voir dire, was struck by the state. Rockett objected, and the court held that a *prima facie* case was made.

Under *Batson* v. *Kennedy*, 476 U.S. 79, 106 S.Ct. 1712 (1986), the Equal Protection Clause forbids prosecutors from challenging potential jurors solely on the basis of race. In Arkansas, the procedures to be followed when a *Batson* objection is raised are as follows:

> First, the defendant must make a prima facie case that racial discrimination is the basis of a juror challenge. In the event the defendant makes a prima facie case, the state has the burden of showing that the challenge was not based on race. Only if the defendant makes a prima facie case and the state fails to give a racially neutral reason for the challenge is the court required to conduct a sensitive inquiry.

*Franklin* v. *State*, 314 Ark. 329, 338, 863 S.W.2d 268, 273 (1993).

On appeal, "[t]he standard of review for reversal of the trial court's evaluation of the sufficiency of the explanation must test whether the court's findings are clearly against the preponderance of the evidence." *Colbert* v. *State*, 304 Ark. 250, 255, 801 S.W.2d 643, 646 (1990).

The state's racially neutral reason to strike was based on the fact that Ms. James had been the foreperson of a jury which had just acquitted a defendant the state had prosecuted. The prosecutor stated that he had been extremely disappointed in that verdict of acquittal because he thought that it was "wholly against the proof." The trial court accepted this racially neutral rationale, and we cannot say the court was clearly wrong. We add that Ms. James was not the only potential minority juror, and another minority did sit as a juror.

The last point on appeal by Rockett is that the trial court erred when it did not allow him to produce evidence that someone else had confessed to the homicide. When Rockett's counsel attempted to elicit a response from Detective Smiley regarding a person who had heard that someone else had admitted to the shooting, the trial court sustained the deputy prosecutor's hearsay objection. The court stated that the question injected collateral issues that are outside the court and that there is a need to have the people who made those statements in court. Moreover, a sufficient proffer of the evidence sought to be offered is required to allow an appellate court to evaluate the exclusion of

that evidence. *Munn* v. *Munn*, 315 Ark. 494, 868 S.W.2d 478 (1994). Without a proffer, this Court cannot evaluate any alleged error argued by Rockett.

As required by Ark. Sup. Ct. R. 4-3(h), the record has been reviewed for other reversible error, and none is found. Therefore we affirm.