42 S.W.3d 432 (2001)
344 Ark. 544
Bruce JUNKIN, M.D.
v.
NORTHEAST ARKANSAS INTERNAL MEDICINE CLINIC, P.A., an Arkansas Professional Association;
PhyCor of Northeast Arkansas, Inc., a Tennessee Corporation; and
PhyCor, Inc., a Tennessee Corporation.
No. 00-434.
Supreme Court of Arkansas.
April 26, 2001.
*433 Jim A. McLarty, Newport, and Robinson, Staley, Marshall & Duke, P.A. by William T. Marshall and Robert L. Robinson, Jr., Little Rock, for appellant.
Lyons, Emerson & Cone, P.L.C. by Scott Emerson, Jonesboro, for appellees.
ANNABELLE CLINTON IMBER, Justice.
The appellant, Bruce Junkin, is a licensed physician and has been practicing medicine in Newport since the 1970's. In 1993, he began negotiating a contract with Appellee Northeast Arkansas Internal Medicine Clinic for the sale of his medical practice to the Clinic. On December 31, 1993, Dr. Junkin and the Clinic executed a merger agreement to that effect, and Dr. Junkin became a shareholder in the Clinic. Pursuant to an employment agreement executed on the same day, the Clinic agreed to retain Dr. Junkin as an employee physician in Newport. This employment agreement did not contain a covenant not to compete. Thereafter, Dr. Junkin continued to practice medicine in Newport as an employee, stockholder, and director of the Clinic.
On March 1, 1995, the Clinic entered into an agreement with Appellee PhyCor, Inc. (PhyCor), a Tennessee corporation, whereby the Clinic agreed to sell, and PhyCor agreed to buy, a majority of the Clinic's assets. At the time the agreement between the Clinic and PhyCor was executed, Dr. Junkin was a shareholder in the Clinic and a member of the Clinic's board of directors. Pursuant to the Asset Purchase Agreement, the Clinic agreed to enter into a Service Agreement with a subsidiary of PhyCor. Additionally, the Asset Purchase Agreement provided that all physicians employed by the Clinic "shall have executed non-competition covenants with [the Clinic]" as a condition precedent to the obligations of PhyCor. As consideration for the sale of the Clinic's assets to PhyCor, Dr. Junkin received a pro rata share of the Clinic's proceeds from the sale in the amount of $174,388.
*434 Also on March 1, 1995, the Clinic entered into the Service Agreement with PhyCor of Northeast Arkansas, Inc. (PhyCor-Ark.), a Tennessee corporation and subsidiary of PhyCor. According to Article 7.2 of the Service Agreement, the Clinic was required to obtain and enforce formal employment agreements with its current physician stockholders and employees, whereby the physicians would covenant not to compete with the Clinic within a certain geographic area for eighteen months after termination of their employment with the Clinic. Article 7.4 stated that the employment agreement with each physician could provide for the physician's release from his or her covenant not to compete upon payment of certain liquidated damages.
Pursuant to the terms of the Asset Purchase Agreement and the Service Agreement, the Clinic and Dr. Junkin entered into a new employment agreement on March 31, 1995, whereby Dr. Junkin was employed by the Clinic to practice medicine in Newport. This Agreement of Employment contained the following provisions for a covenant not to compete and liquidated damages:
8.1 Covenant Not to Compete. The Physician acknowledges that, during the term of this agreement, the Physician will acquire certain confidential information about the Clinic's practice of medicine and patients and establish relationships with patients on behalf of the Clinic. Therefore:
(a) During the term of this Agreement and for a period of eighteen months immediately after termination of the Physician's employment, however such termination may occur and whether by the will of Physician or Clinic and with or without cause, the Physician shall not, either directly or indirectly, establish, operate, or provide physician services at any medical office, clinic, or outpatient and/or ambulatory treatment or diagnostic facility providing services substantially similar to those provided by the Clinic within the geographic area identified on Schedule "A" hereto, which is expressly incorporated by reference herein. The geographic area described in Schedule "A" may be amended from time to time by action of the Clinic to accord with actual or planned expansion of the Clinic's scope of operations, and such amendment, made in writing and attached hereto, shall be effective without further action of the Physician or Clinic.
(b) The parties intend that the restrictions described in subpart (a) above are intended to restrict the Physician from competing directly or indirectly with any of the Clinic's practice, however any termination of employment is effected.
(c) Physician agrees that competition shall include, but not be limited to, engaging in any competitive activity, including the practice of medicine either as an individual, as a partner, or as an employee, agent or representative or any other person or entity, or otherwise being associated in any competitive activity with any business entity which directly or indirectly competes with the Clinic.
(d) Physician further agrees that Physician shall not directly or indirectly solicit or attempt to solicit, for the Physician's own account or for the account of any other person or entity, any patient of the Clinic whom the Physician has treated during the term of this Agreement, for a period of 18 months from the date of termination of Physician's employment, however such termination is effected.
*435 8.2 Liquidated Damages. Upon the termination of the Physician's employment for any reason, the Physician may obtain a written release from the restrictive covenants described in Section 8.1 by paying to the Clinic an amount of money equal to the greater of (a) the Physician's average annual income as shown on the W-2 forms prepared by the Clinic for the two (2) most recent years, or (b) the Physician's allocable share of the proceeds received by the Clinic from the sale of assets to PhyCor, Inc. under agreement dated March 27, 1995, as specifically set forth in a letter of even date herewith from the Clinic Administrator to the Physician. Such payment shall be made by the Physician to the Clinic at the time the Clinic formally releases the Physician from the covenant herein.
The geographic area described in Schedule "A" included not only Newport and Jackson County, but also Cross, Independence, Poinsett, Craighead, Mississippi, Green, Lawrence, Sharp, Fulton, Randolph, and Clay counties. Dr. Junkin's allocable share of the proceeds received by the Clinic from the sale of assets to PhyCor was $174,388, as evidenced by a letter from the Clinic to Dr. Junkin.
Finally, Dr. Junkin entered into an agreement (Management Agreement) with PhyCor and PhyCor-Ark. on March 31, 1995, which provided in relevant part:
In consideration of the benefit received by the undersigned under the Asset Purchase Agreement and the Service Agreement, and in order to induce PhyCor and Sub [PhyCor-Ark.] to enter into such agreements, the undersigned agrees that in the event the employment of the undersigned with [the Clinic] terminates for any reason and in the event within a period of 18 months of the effective date of termination the undersigned, either directly or indirectly, establishes, operates, or provides physician services at any medical office, clinic, or outpatient and/or ambulatory treatment or diagnostic facility providing services substantially similar to those provided by [the Clinic] within the geographic area set forth on Exhibit I hereto, then Sub shall be entitled to provide, and is hereby engaged by the undersigned to provide, the practice management and other services set forth in the Service Agreement to the undersigned in his or her new practice, whether or not the undersigned is engaged in private practice by himself or herself or with others. Accordingly, Sub shall provide the services and be paid a fee as set forth in the Service Agreement for a period of 15 years as if the Service Agreement were a separate agreement between the undersigned and the Sub.
* * *
The undersigned may be released from the covenants contained herein by paying liquidated damages in an amount equal to the lesser of (1) $174,388.00 or (2) the product of (a) the remaining term of the Service Agreement and (b) 15% of the difference between (i) net clinic revenue (as defined in the Service Agreement) generated by or otherwise resulting from the work of the undersigned during the previous 24 months (divided by two) and (ii) Clinic Expenses (as defined in the Service Agreement) allocable to the undersigned or otherwise resulting from the work of the undersigned during the previous 24 months (divided by two). The amount of the liquidated damages shall be reduced by any amounts paid by the undersigned to [the Clinic] in connection with the restrictive covenant contained in the undersigned's employment agreement *436 with [the Clinic]. Such payment shall be made in cash to PhyCor simultaneously with the undersigned's departure from [the Clinic].
The undersigned acknowledges that the undersigned is a shareholder and/or employee of [the Clinic] and that consummation of the transactions contemplated under the Asset Purchase Agreement and the Service Agreement are conditioned upon the undersigned and other physician employees of [the Clinic] executing agreements identical to this Agreement.
The geographic area referred to in this agreement was the same twelve-county area described in the Schedule "A" attachment to the Agreement of Employment.
In December 1998, Dr. Junkin filed a complaint for declaratory relief and cancellation in Jackson County Chancery Court. In that complaint, Dr. Junkin stated that he desired to separate from the Clinic, PhyCor, and PhyCor-Ark. and to be free from any post-employment restrictions or obligations to those entities. He further stated that he wished to continue practicing medicine in Newport following his separation from the Clinic. Dr. Junkin asked the chancellor to declare the restrictive covenants and liquidated-damages provisions in the Agreement of Employment and the Management Agreement void and unenforceable, and he asked the chancellor to enjoin the Clinic, PhyCor, and PhyCor-Ark. from taking any action to enforce those agreements. Finally, Dr. Junkin sought to have all four contracts (namely the Asset Purchase Agreement, the Service Agreement, the Agreement of Employment, and the Management Agreement) canceled by the chancellor based upon an allegation in the complaint that those contracts collectively violated Arkansas's corporate-practice-of-medicine doctrine.
Following a trial on the merits, the chancellor entered an order and found, in relevant part, as follows:
19. The covenant not to compete of Section 8.1 of Plaintiff's Employment Agreement # 2 was ancillary to and entered into in connection with a business or sale transaction, and is not applicable to a mere employer-employee relationship. However, specific enforcement of the restrictive covenant as to prohibiting Plaintiff's continued practice in the geographic area designated in the agreement would be detrimental to the patients affected and should not be required.
20. As to the enforceability of the liquidated damages provision of Employment Agreement # 2, the Plaintiff was fully aware of all the terms of the agreement. The liquidated damages clause of Section 8.2 of the Plaintiff's Employment Agreement # 2 is reasonable and enforceable, thus requiring the Plaintiff to pay the liquidated damages as specified in the clause to relieve himself of the restrictive covenant obligations.... The amount of liquidated damages as calculated in Section 8.2 does bear a reasonable relationship to the actual damages that may flow [sic] the Plaintiff's breach of the covenant not to compete, it being reasonable for the parties to stipulate that the sale proceeds distributed by [the Clinic] to Plaintiff would adequately compensate [the Clinic] for its unascertainable loss in the event plaintiff violated the covenant not to compete. The case of Duffner v. Alberty, 19 Ark.App. 137, 718 S.W.2d 111 (1986) is distinguishable from this case....
21. Based on the terms of the damages provision and financial benefits conferred to Plaintiff under the agreement, Plaintiff should be required to *437 pay to [the Clinic] the sum of $174,388 in order to be released from his noncomplete [sic] obligations.
22. The Plaintiff read and was fully aware of the contents of the Management Agreement prior to singing it. The Management Agreement contains no covenant prohibiting competition on the part of the Plaintiff. The damages provision contained in the Management Agreement is reasonable and enforceable.
23. Based on the terms of the damages provision and financial benefits conferred to Plaintiff under the Management Agreement, Plaintiff should be required to pay to [sic] the sum of $174,388.00 to PhyCor, or be required to engage PhyCor of Northeast Arkansas, Inc. to manage his practice in the time and manner specified in that Agreement in order to be released from his obligations contained in that Agreement.
24. Because the Management Agreement provides that payment of any sums to [the Clinic] under its liquidated damages provision shall also serve as credit and satisfaction for the complete release of the Plaintiff's obligations under the Management Agreement with PhyCor and PhyCor of Northeast Arkansas, Inc., PhyCor shall be required to so provide any such credit.
25. Plaintiff does not have standing to challenge the validity of the Asset Purchase Agreement and Service Agreement between [the Clinic] and PhyCor, and Plaintiff has not provided this court with any evidence that such agreements violated the federal anti-kickback statutes or Arkansas' corporate practice of medicine doctrine.
(Emphasis added.) Dr. Junkin appeals from that portion of the Chancellor's decree ordering him to pay liquidated damages in the amount of $174,388.
For his first point on appeal, Dr. Junkin contends that the covenant not to compete contained in Section 8.1 of his Agreement of Employment with the Clinic is void and unenforceable because it violates public policy and the geographical area is excessive and unreasonable. We need not address this point, as the trial court's ruling on the issue was favorable to Dr. Junkin, and the Clinic has not cross-appealed from that ruling. Paragraph 19 of the trial court's order clearly states that the covenant not to compete contained in the Agreement of Employment is not enforceable. It is well settled that a party cannot appeal from a trial court's ruling in his favor. Goff v. State, 341 Ark. 567, 19 S.W.3d 579 (2000); Byrd v. State, 337 Ark. 413, 992 S.W.2d 759 (1999); Arkansas Dep't of Fin. and Admin. v. Pharmacy Assoc., Inc., 333 Ark. 451, 970 S.W.2d 217 (1998);
In a second point, Dr. Junkin argues that the liquidated-damages provision contained at Section 8.2 of the Agreement of Employment is unenforceable. That provision provides that Dr. Junkin "may obtain a written release from the restrictive covenants described in Section 8.1" by paying the Clinic a certain amount of liquidated damages. As it relates to this case, the amount of liquidated damages is $174,388, or Dr. Junkin's allocable share of the proceeds received by the Clinic from the sale of assets to PhyCor. Section 8.2 also states:
The parties further acknowledge and agree that since a remedy at law for any breach or attempted breach of the provisions of this covenant shall be inadequate, either party shall be entitled to specific enforcement and injunctive or other equitable relief in case of any such breach or attempted breach in addition to whatever other remedies may exist at law.
*438 (Emphasis added.) Although the trial court found that "specific enforcement of the restrictive covenant as to prohibiting [Dr. Junkin's] continued practice in the geographic area designated in the agreement would be detrimental to the patients affected and should not be required[,]" it nevertheless found that Dr. Junkin "should be required to pay to [the Clinic] the sum of $174,388 in order to be released from his non-complete [sic] obligations." (Emphasis added.) Dr. Junkin contends that this latter finding was erroneous. We agree.
Common sense dictates that if a restrictive covenant cannot be specifically enforced because it violates public policy, then a related liquidated-damages provision also cannot be enforced. It is clear from the plain wording of Section 8.2 of the Agreement of Employment that the payment of liquidated damages is required of the physician only to obtain his release from the specific enforcement of the restrictive covenants. However, the physician should not have to pay such liquidated damages if the covenant cannot be enforced, i.e., by specific enforcement or injunction. Accordingly, we reverse the trial court's finding in paragraph 21 of its order that Dr. Junkin should be required to pay the Clinic $174,388 in order to be released from his non-compete obligations.
Dr. Junkin makes the following arguments for his next two points on appeal: the covenant not to compete and the corresponding liquidated-damages provision are not enforceable because (1) the Asset Purchase Agreement and Service Agreement violate the Federal Anti-Kickback Act, 42 U.S.C. § 1320a-7b(b) (Supp.1998), and (2) PhyCor did not purchase Dr. Junkin's goodwill. We need not address the merits of either of these issues. Both arguments are attempts to show this court that the covenant not to compete and its ancillary liquidated-damages provision are unenforceable. As previously stated, the trial court held in Dr. Junkin's favor with regard to the enforceability of the covenant not to compete, and he cannot appeal from a ruling in his favor. Furthermore, as stated in the preceding paragraph, if the covenant not to compete is not specifically enforceable, then the related liquidated-damages provision is also unenforceable.
Next, Dr. Junkin contends that the Asset Purchase Agreement, the Service Agreement, the Agreement of Employment, and the Management Agreement should not be enforced because they violate the corporate-practice-of-medicine doctrine in Arkansas. See the Arkansas Medical Corporation Act at Ark.Code Ann. § 4-29-301 et seq. (Repl.1996). Once again, we need not address the merits of this argument. That part of the trial court's order finding that Dr. Junkin did not provide any evidence that "such agreements" violated the corporate-practice-of-medicine doctrine was limited to the Asset Purchase Agreement and the Service Agreement. The trial court made no ruling with regard to whether the Agreement of Employment and the Management Agreement violated the corporate-practice-of-medicine doctrine. Issues not ruled on below will not be considered on appeal. Flowers v. State, 342 Ark. 45, 25 S.W.3d 422 (2000). Moreover, Dr. Junkin has not appealed from the trial court's finding that he lacked standing to challenge the validity of the Asset Purchase Agreement and Service Agreement between the Clinic and PhyCor. Thus, for purposes of this appeal, we are bound by the trial court's ruling that Dr. Junkin does not have standing to challenge those agreements. In any event, his complaint only sought a declaratory judgment that the covenant not to compete and the liquidated-damages provisions contained in the Agreement of *439 Employment and the Management Agreement were unenforceable. Dr. Junkin raised the issue of the validity of all four agreements under the Arkansas Medical Corporation Act only to the extent that it bolstered his contention that the covenant and damages provisions were unenforceable.
Lastly, Dr. Junkin asserts that the agreements are illegal and should not be enforced at all because they violate federal and state law. It is unclear from his brief whether this argument refers to the liquidated-damages provision contained in the Agreement of Employment or a similar provision contained in the Management Agreement. To the extent that this argument can be construed as pertaining to the appropriateness of liquidated damages under the Agreement of Employment, that issue has been fully addressed above. However, if the argument can be taken as challenging the trial court's ruling that Dr. Junkin must pay liquidated damages to be released from his Management Agreement obligations, we must reject the argument for lack of convincing argument or citation to relevant authority. See Jones v. Abraham, 341 Ark. 66, 15 S.W.3d 310 (2000).
The Management Agreement was a separate agreement that required Dr. Junkin to retain the management services of PhyCor-Ark. in the event that he terminated his employment with the Clinic and started his own practice in the same geographic area. Alternatively, the agreement allowed Dr. Junkin to be released from the requirement to retain PhyCor-Ark.'s management services upon payment of liquidated damages in the amount of the lesser of (1) his allocable share of the proceeds of the sale of assets from the Clinic to PhyCor ($174,388), or (2) a sum equal to 15% of the difference between net clinic revenues and clinic expenses allocable to Dr. Junkin, as averaged over the preceding two years.
The chancellor distinguished the Management Agreement from the Agreement of Employment on that ground that the former contained no covenant prohibiting competition on the part of Dr. Junkin. The chancellor also found that the damages provision contained in the Management Agreement was both reasonable and enforceable. The chancellor specifically relied on that fact that Dr. Junkin read and was fully aware of the contents of the Management Agreement prior to signing it.
Dr. Junkin has offered no convincing argument or authority to support the contention that he should be allowed to be released from his Management Agreement with PhyCor-Ark. without having to pay liquidated damages. The Management Agreement contains no covenant not to compete. Dr. Junkin has thus failed to demonstrate that the chancellor's findings on this issue are clearly erroneous.
For these reasons, we reverse the trial court's finding that Dr. Junkin should pay liquidated damages to the Clinic in order to be released from his non-compete obligations. We affirm the trial court in all other respects, including the finding that Dr. Junkin should be required to pay the sum of $174,388 to PhyCor in order to be released from his obligations under the Management Agreement.
Affirmed in part, reversed in part.