Allen W. BIRD II, Trustee *v.*
PAN WESTERN CORPORATION et al

76-250                                              546 S.W. 2d 417

Opinion delivered February 14, 1977
(Division II)

*Rose, Nash, Williamson, Carroll, Clay & Giroir,* for appellant.

*Smith, Williams, Friday, Eldredge & Clark,* by: *Overton S. Anderson,* for appellees.

JOHN A. FOGLEMAN, Justice. Appellant is the trustee in bankruptcy for C. E. "Red" Higginbotham, Inc. who ex-

ecuted a document entitled "SUBCONTRACT AGREEMENT" with appellees, Pan Western Corporation, as "Contractor," for heating and air conditioning of Phase I of Raintree Apartments in Little Rock. After the Higginbotham corporation had, from its viewpoint, completed the job, it filed a voluntary petition in bankruptcy. Appellant then served notice of intent to file a materialman's and laborer's lien for $12,300, the alleged balance due on the $123,000 contract with Pan Western, and thereafter filed a foreclosure suit. Appellees denied the debt, alleged improper performance of the contract and asserted that appellant was barred from recovery by Ark. Stat. Ann. § 71-701 et seq (Supp. 1975) because C. E. "Red" Higginbotham, Inc. was not licensed by the Contractors Licensing Board. Summary judgment was granted on appellees' motion on the ground that the claim was barred by the provisions of Ark. Stat. Ann. § 71-713 (Supp. 1975).

Appellant admits that his corporation was not licensed, but contends that recovery was not barred by § 71-713. The basis of his argument is that this corporation was not a contractor as defined by § 71-701. The gist of it is that one is not a contractor, as defined by the act, unless he undertakes to supply labor and materials under a contract with the owner of the improvement. Thus, he asserts, his bankrupt, a subcontractor, did not come within the purview of the act.

The chancellor was right. Sec. 71-701 defines a "contractor" to be "any . . . corporation . . . , who for a fixed price, commission, fee or wage attempts to or submits a bid to construct, or contracts or undertakes to construct, or assumes charge, in a supervisory capacity or otherwise, of the construction, erection, alteration or repair, or has or have constructed, erected, altered or repaired, under . . . its direction, any building, highway, sewer, grading or other improvement or structure, except single family residences, when the cost of the work to be done, or done, in the State of Arkansas by the contractor including but not limited to labor and materials is twenty thousand dollars ($20,000.00) or more. It is the intention of this definition to include all improvements or structures, excepting only single family residences." Sec. 71-713 provides, in pertinent part, that "[a]ny contractor who for a fixed price, commission, fee or wage, attempts to or submits a

bid or bids to construct, or contracts to construct or undertakes to construct, or assumes charge in a supervisory capacity or otherwise, of the construction, erection, alteration or repair, of any building, highway, sewer, grading or any other improvement or structure, when the cost of the work to be done by the contractor, including but not limited to labor and materials, is twenty thousand dollars ($20,000.00) or more, without first having procured a license to engage in the business of contracting in this state . . . shall be liable to a fine . . . . No action may be brought either at law or in equity to enforce any provision of any contract entered into in violation of this act."

Appellant first seizes upon language in our opinions which he argues indicates that a contractor, as defined by the statute, is one who undertakes to supply labor and materials for a specific improvement under a contract with the owner, citing *Arkansas State Licensing Board for General Contractors v. Lane,* 214 Ark. 312, 215 S.W. 2d 707 and *Davidson v. Smith,* 258 Ark. 969, 530 S.W. 2d 356. He takes this to mean that a subcontractor who enters into a contract with a contractor rather than the owner does not come within the purview of the act. He reads too much into these opinions. In the first case, the statute, by its own language, then applied only to general contractors, and required licenses of those engaged in "general contracting" only. The appellee-defendant in that case was not engaged in the contracting business. He was an engineer employed to supervise the construction of an outdoor drive-in theater. The language relied upon by appellant simply appeared in a definition of the word contractor taken from a footnote in a California case. It was used to support other definitions quoted in the *Lane* opinion. Those definitions did not use the phrase "with the owner," and the decision does not consider the question raised here. In the second case the agreement was between the contractor and the owner and we merely recited the definitions and distinctions set out in the earlier case. In both cases the issue was whether the appellee was a contractor or employee. Nothing in either case can be taken to mean that we have construed the latest expression of the legislative intent to mean that only those who contract with the owner come within the scope of the statute in its present form.

60

The ordinary and generally accepted meaning of words used in a statute must yield to the meaning intended by the General Assembly when it is clear from the context of the act that a different meaning is intended. *City of Fort Smith v. Hairston,* 196 Ark. 1005, 120 S.W. 2d 689. Thus, in construing an act, the courts are bound by specific definitions of a word by the legislature in that act, regardless of the usual and ordinary meaning of that word; unless the definition is arbitrary, creates obvious incongruities in the statute, defeats a major purpose of the legislation or is so discordant to common usage as to generate confusion. 1A Sutherland, Statutory Construction (4th Ed.) pp. 59, 310, 81; §§ 20.08, 27.02, 47.07. We have no reason to apply anything other than the statutory definition in this case.

Following the decision in *Lane,* the General Assembly amended § 71-701 by Act 153 of 1951. Some of the legislative history is set out in the compiler's note following § 71-701 (Repl. 1957) as follows:

The 1951 amendment substituted the word "contractor" for "general contractor"; inserted the words "or contracts" following the words "or bids to construct"; substituted the words "assumes" for "assume"; inserted the words "in a supervisory capacity or otherwise" following the word "charge"; inserted the words "or has or have constructed, erected, altered or repaired" before the words "under his, their or its discretion"; and substituted the words "work to be done, or done, in the State of Arkansas by the contractor, including but not limited to labor and materials, is twenty thousand dollars ($20,000.00) or more" for the words "undertaking is ten thousand dollars ($10,000.00) or more, and one who shall engage in the construction or superintending the construction of any structure or any undertaking or improvements, as above mentioned, in the State of Arkansas, costing ten thousand dollars ($10,000.00) or more, shall be deemed to have engaged in the business of general contracting in the State of Arkansas, provided that this definition shall not include architects or engineers, whose only financial interests in the projects shall be the architectural or engineering fees for preparing plans and specifications, surveys and

supervision"; . . .

It is also pointed out in the note that, in this amendment, the General Assembly added the following paragraph:

Wherever the term "general contractor" shall appear in this act it shall mean "contractor," as hereinbefore defined, and wherever the term "general contracting" shall appear in this act it shall mean "contracting."

The section was further altered by Act 150 of 1965, Act 142 of 1967 and Act 397 of 1971, but the only change relevant to the case at bar is the deletion of the quoted paragraph which had been added in 1951. Clearly, this leaves the statutory definition as the controlling one and eliminates therefrom any reference to general contractors as such.

Appellant suggests that a strict construction favoring his bankrupt should be given the act, because: the definition of "contractor" lends itself to some confusion; and licensing statutes are construed strictly in favor of the citizen and against the government, especially where penalties are provided for violation. Even so, we find nothing in the act to indicate that the General Assembly intended that to be a "contractor" under the Act, one must contract with the owner.

The contract in issue was an undertaking to "furnish all labor, materials, equipment, services and supplies required for a complete job of heating and air conditioning of Phase I of Raintree Apartments in Little Rock, Arkansas in accordance with the plans and specifications prepared by the architects." It contained this paragraph:

It is understood that this job is for the construction of Phase I of the Raintree Apartments.

The contract was to be "completed . . . to the complete satisfaction of the owner." This subcontractor agreed that it should, at its expense, "to Owner's satisfaction" make good any defect or deficiency in the work and would indemnify

"Owner and Contractor from any and all claims, loss, damage, expense arising from any such defect or deficiency." As each partial payment under the contract was made to the subcontractor, the materials and work covered by that payment became the property of the contractor.

In addition, the subcontractor was obligated to perform in accordance with the plans and specifications, and had sole responsibility for all materials and work (even after payment), and the restoration of damaged work. It was required to complete the work expeditiously, according to construction requirements, at the convenience of the contractor, and to its satisfaction; to deliver the whole of the work in a clean and proper state ready for everyday service and use. It agreed to coordinate its work with the work of the contractor and the work of other subcontractors on the premises; to comply with requests of the contractor to put additional manpower on the job and to employ only such labor as would work in harmony with other trades on the project.

Under these circumstances C. E. "Red" Higginbotham, Inc., for a fixed price, contracted to construct, or assumed charge, in a supervisory capacity *or otherwise*, of the construction, erection, or alteration or had constructed, erected or altered, under its direction a building, improvement or other structure and the cost of the work to be done was in excess of $20,000.

The cases cited by appellant cannot be read to support the position that subcontracting for construction of a portion of a building or of an integral part thereof is not included in the general term "construction" as used in the act. Neither can the statute be so construed. The obvious purpose of the act is to require contractors who desire to engage in certain types of construction work to meet certain standards of responsibility, such as experience, ability, financial condition, etc. Ark. Stat. Ann. § 71-709. These purposes are no less valid for a subcontractor than for a general contractor. The appellant's version of the act would result in an inconsistent application in the licensing requirements in that a corporation or individual or other, who contracted to install heating and air conditioning in an existing building would be engaging in the "alteration or repair" of that building, therefore

would be required to obtain a license; but one who subcontracted to do the same work on a building under construction would not be so required. Webster's Third New International Dictionary defines "construct:" "To put together so as to form, make, or create something."

Appellant argues, however, that his position is reinforced by the fact that, in the statute the words "assumes charge" are modified by the subsequent phrase "in a supervisory capacity or otherwise." But we think the use of the latter phrase including the words "or otherwise," emphasized above, is indicative of a legislative intent to broaden, rather than narrow, the application of the statute, so that assuming charge could be in a capacity other than supervisory. It seems clear that, in the context used in the statute and in view of the simultaneous changes in its wording "or otherwise" must be construed to mean "in a different manner, or in any other way." There is a striking parallel in construing the words in a statute in *Townley* v. *Hartsfield,* 113 Ark. 253, 168 S.W. 140. There we said:

> *** The words "or otherwise" in law, when used as a general phrase following an enumeration of particulars, are commonly interpreted in a restricted sense as referring to such other matters as are kindred to the classes before mentioned. Century Dictionary. The author says the phrase "or otherwise," when following an enumeration, should receive an *ejusdem generis* interpretation. Otherwise is also defined by Century Dictionary, the Standard Dictionary and by Webster, as meaning, "In a different manner; in any other way." We think the phrase "or otherwise" in the act under consideration was intended to be used in its broadest and most comprehensive sense. The phrase "or otherwise" is not used in the statute as a general phrase following an enumeration of particulars; but it follows the words "upon failure to elect by tie vote" and is placed in juxtaposition to these words. When the whole clause "upon failure to elect by tie vote or otherwise," is considered together with reference to the purpose and object of the act, it is evident that the Legislature intended to give the county judge the power to appoint where no one was elected or where the person elected failed for any reason to qualify

when the time for entering upon the new term arrived.
***

The words "in a supervisory capacity or otherwise" were added at the same time that the word "contractor" was substituted for "general contractor." We think that the legislative intent was to broaden the application of the act so that its application would not necessarily be limited to one who contracted with the owner.

The decree is affirmed.

We agree. HARRIS, C.J., and HOLT and ROY, JJ.