James Wayne WISENER and John Fields Wisener,
*Individually* and as *Co-Trustees* of the
Elizabeth Hargis Wisener Trust;
Brenda Wisener; and Karen Wisener
*v.* Judith Wisener BURNS, *Individually*
and as *Co-Trustee* of the
Elizabeth Hargis Wisener Trust

00-792 44 S.W.3d 289

Supreme Court of Arkansas
Opinion delivered May 24, 2001

*Friday, Eldredge & Clark,* by: *James E. Harris, Barry E. Coplin,* and *Robert S. Shafer,* for appellants.

*B. Kenneth Johnson,* for appellee.

ANNABELLE CLINTON IMBER, Justice. On February 1, 1978, Elizabeth Hargis Wisener created the Elizabeth Hargis Wisener Trust, transferring several parcels of timberland to her three children, James ("Jim") Wisener, John Wisener, and Judith ("Judy") Burns, as co-trustees and beneficiaries of the trust. Mrs.

Wisener reserved to herself the income produced from the trust property during her life. All three of Mrs. Wisener's children were granted equal authority over the management of the trust, but Judy, the oldest, assumed primary responsibility for management of the trust and the income produced therefrom.

Mrs. Wisener died on August 28, 1991. Thereafter, the appellants, Jim and John,[1] individually and as co-trustees of the Elizabeth Hargis Wisener Trust, filed a complaint against their sister, Judy,[2] alleging that she had mismanaged the income from the trust. In particular, Jim and John accused Judy of making unequal disbursements to herself and her family from the trust account during the entire term of the trust. They requested relief in the Chancery Court of Bradley County, wherein they asked the court, *inter alia*, to order Judy to account for all trust funds that she had handled and to restore to the trust any funds for which she could not properly account. They further requested that the trial court enter a declaratory judgment equally dividing the benefits of the trust among Jim, John, and Judy, allowing for the equalization of funds already disbursed to each party, and that the trial court partition and distribute the real properties of the trust among the parties.

Judy denied any mismanagement of the income produced by the trust properties and alleged that Jim and John had failed to shoulder any responsibility as trustees of the trust or as caretakers for Mrs. Wisener. She further asserted that the income generated by the trust was the property of Mrs. Wisener and not the property of the trust; therefore, the chancery court had no jurisdiction to decide any matter pertaining to its disbursement. According to Judy, any cause of action regarding that income would fall within the jurisdiction of the probate court and the estate proceedings.

Following an extensive trial, the chancery court concluded that the trust terminated by its own terms upon the death of the life beneficiary, Mrs. Wisener, and ordered: (1) the partition of the trust property in accordance with the interests of the remainder

---

[1] Brenda and Karen Wisener, wives of Jim and John, are also named plaintiffs and appellants in this action. Brenda and Karen make no claims independent of those raised by Jim and John. Thus, for simplicity in referencing the parties, we incorporate the claims of Brenda and Karen into those raised by Jim and John, and our holdings with respect to the claims of Jim and John apply with equal force to Brenda and Karen.

[2] Judy's husband, Craig Burns, was also named as a defendant but was dismissed by the trial court pursuant to a motion for judgment on the pleadings.

beneficiaries under the trust; and, (2) an accounting and equalization of post-mortem distributions made by Judy from income produced by the real property that had been the trust property. These orders are not challenged on appeal. The trial court refused to order an accounting or restitution of pre-mortem distributions made by Judy from income produced by the trust property, holding that the income generated by the trust belonged to Mrs. Wisener and not to the trust. It is from this order that appeal is taken.

## I. Restitution of Pre-Mortem Distributions

### A. The Income Produced from the Trust Property

For their first point on appeal, Jim and John argue that the trial court erred in refusing to order restitution of all funds disbursed by Judy from the trust account before their mother's death that cannot be clearly attributed to the maintenance and support of their mother. In an order filed on December 21, 1998, the trial court found that the corpus of the trust, which is comprised of several parcels of real property, was intact[3] and that the value of the trust had increased significantly over the life of the trust. In addition, the trial court found that there had been no showing of mismanagement of the trust property; that the net income generated by the trust was the property of Mrs. Wisener and not the property of the trust; and that most of the net income produced from the trust property was handled by Judy due to the non-participation of the co-trustees, the desires of Mrs. Wisener, and the durable power of attorney granted to Judy by Mrs. Wisener.

The trial court refused to order an accounting or restitution of the pre-mortem distributions from the income produced by the trust property for two primary reasons: (1) Jim's and John's nonfeasance in failing to perform their own duties as trustees made them equally liable for any mismanagement that may have occurred; and, more importantly, (2) the funds Jim and John wanted restored to them were the property of Mrs. Wisener and not the property of the trust. Based upon this second reason, the trial court ruled that, upon Mrs. Wisener's death, the authority to pursue restitution of any misappropriated funds remained with her probate estate.[4]

---

[3] The trial court's finding that the corpus of the trust was intact recognized that one parcel of the trust property had been sold by the agreement of all three trustees following the death of Mrs. Wisener in order to pay estate taxes.

[4] The trial court also denied the appellants' oral motion at trial to amend their

■■ We review decisions of the chancery court *de novo*, but we do not set aside findings of fact unless they are clearly erroneous. *Kinghorn v. Hughes*, 297 Ark. 364, 367, 761 S.W.2d 930 (1988). When reviewing trust cases in Arkansas, we have followed the RESTATEMENT (SECOND) OF TRUSTS. *McPherson v. McPherson*, 258 Ark. 257, 5223 S.W.2d 623 (1975).

Jim and John first argue that the trial court clearly erred in finding that the income generated by the trust property belonged to Mrs. Wisener and not to the trust. They rely upon the case of *Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998), to support their argument that, as a matter of common law, the earnings of a trust fund belong to the trust. However, the *Phillips* decision is inapposite. In that case, the U.S. Supreme Court held that interest income generated by funds held in Interest on Lawyers Trust Account (IOLTA) accounts is the "private property" of the owner of the principal for purposes of the Takings Clause of the United States Constitution. *Id.* The issue in this case is not who owns the interest generated by money in an interest-bearing account; rather, the issue here is who owns the income generated by the trust property. While reciting the general rule that "interest follows principal," Jim and John acknowledge that the instrument creating the trust may provide otherwise.

■ "Whether proceeds or income from . . . particular property are included within the operation of a trust is determined by the will or intent of the settlor and the language of the trust instrument." 90 C.J.S. *Trusts* § 172(b) (1955). "A trust instrument is to be construed so as to effectuate its purpose, which is ordinarily, or primarily, to be determined from its terms." 90 C.J.S. *Trusts* § 173 (1955). When the purpose of the trust is ascertained, that purpose will take precedence over all other canons of construction. *Id.* The purpose of a trust is to be ascertained from its terms. *Id.* The terms of a trust include the "manifestation of intention of the settlor with respect to the trust" provisions. RESTATEMENT (SECOND) OF TRUSTS § 4 (1959).

■ The question presented, therefore, is whether the trial court erred in finding that, under the terms of the Elizabeth Hargis Wisener Trust, the income generated from the corpus of the trust belonged to Mrs. Wisener and not to the trust itself. In order to

---

pleadings to add to the designation of parties by identifying the plaintiffs as beneficiaries of Mrs. Wisener's estate and Judy as administrator of Mrs. Wisener's estate.

answer this question, we must address the terms of the trust. The introductory provisions of the trust agreement provided, in relevant part, as follows:

> The trust established by this Agreement is generally created in order to: (1) immediately and irrevocably transfer the trust property noted below from the Grantor's estate and to the designated beneficiaries; (2) reserve to the Grantor for life the income produced from such trust property; (3) release the Grantor from the duties and responsibilities required for management of such trust property; and (4) provide for effective and continuing management, growth and further development of the trust property during the existence of this trust.

Paragraph one of the agreement designated the property to be transferred by the trust. That property consisted of various parcels of real property described in the document marked Exhibit A and attached to the trust agreement. A review of the stated purpose of the agreement therefore reveals that it was Mrs. Wisener's purpose in creating the trust to convey the real property described in Exhibit A to her children and to divest herself of the necessity of managing that property while reserving to herself the income produced by that property for the rest of her life.

Although the trust agreement also authorized the trustees to determine the manner in which the expenses incurred in the administration of the trust, as well as the cost of repairs and improvements to the trust property, should be apportioned as between corpus and income, the express terms of the trust agreement limited the authority of the trustees. In apportioning or assessing such cost or expenses against current income produced from the trust property, the trustees could not render that income insufficient to support and maintain Mrs. Wisener in the same style and manner to which she was accustomed. The dispositive provisions of the trust provided for the trustees to pay *all* of the net income produced from the trust property to Mrs. Wisener during her lifetime, such that upon her death the *entire* trust property would be conveyed by warranty deed or bill of sale to Judy, Jim, and John, as remainder beneficiaries of the trust.

A review of the terms of the trust document thus reveals that Mrs. Wisener's intent at the time of the trust's creation was that the income generated by the trust belonged to her. She gave the trustees the authority to invade that income for the purpose of administering the trust, but only to the extent that the costs of

administration would not affect her lifestyle. Furthermore, the trustees could not invade or use the corpus of the trust, i.e., the land, in order to support and maintain Mrs. Wisener in the style to which she was accustomed. Her interest as the "life beneficiary" was limited to the income generated off of the land. In other words, the corpus belonged to the trust and the income belonged to Mrs. Wisener. The trustees were charged with the responsibility of determining the extent to which the costs of administration would be taxed to the trust or to Mrs. Wisener. We conclude that the terms of the trust agreement support the trial court's finding that "[t]here is nothing in the trust document which incorporates the income back into the Trust or designates the income to be trust property."

A review of the evidence presented at trial demonstrates that Mrs. Wisener's conduct after the creation of the trust also supports a finding that her intent was to treat all income generated by the trust during her lifetime as her own property. The intention of the settlor at the time of creation of a trust may be shown by facts occurring after that time. RESTATEMENT (SECOND) OF TRUSTS, § 4, cmt. a (1959). Although the extent to which Mrs. Wisener was aware of Judy's distributions from the income is disputed, it is undisputed that she became aware no later than 1986 that Judy was using the income from the trust for purposes other than the support and maintenance of Mrs. Wisener. In 1986, Jim informed Mrs. Wisener that Judy had made disbursements from income generated by the trust to pay for the college education of her daughters and that Judy intended to make similar disbursements to pay for the education of Jim's sons. Not only did Mrs. Wisener not complain about this conduct, she suggested that Jim accept Judy's offer to pay for his sons' education from the income generated by the trust. Furthermore, on June 3, 1983, Mrs. Wisener executed a durable power of attorney granting Judy authority to handle all of Mrs. Wisener's financial affairs, including the authority to withdraw any or all money deposited in Mrs. Wisener's name or "any or all other money to which I am entitled." Mrs. Wisener never filed any kind of action or complaint about the manner in which Judy administered her finances; nor did Mrs. Wisener ever revoke the durable power of attorney.

In sum, after reviewing the record and the trust instrument, we cannot say that the trial court clearly erred in determining that, under the terms of the trust, the income generated by the trust was the property of Mrs. Wisener and not the property of the trust.

## B. *Standing*

Because we find no error in the trial court's finding that the income generated by the trust belonged to Mrs. Wisener rather than the trust, we must determine whether Jim and John can maintain an action for the mismanagement of that income prior to Mrs. Wisener's death. The trial court made no express finding regarding standing, but dismissed the claim for restitution after finding that the income belonged to Mrs. Wisener. Jim and John suggest that this finding contains within it an inherent finding that they lack standing. We agree.

██ ██ A party has no standing to raise an issue regarding property in which he or she has no interest. *Nash v. Estate of Swaffar*, 336 Ark. 235, 242, 983 S.W.2d 942 (1999); *McCollum v. McCollum*, 328 Ark. 607, 612, 946 S.W.2d 181, 184 (1997); *Boyle v. A.W.A., Inc.*, 319 Ark. 390, 394, 892 S.W.2d 242 (1995). Jim and John instigated this action in chancery in their capacities as co-trustees and beneficiaries of the Elizabeth Hargis Wisener Trust. The property for which Jim and John demand an accounting and restitution belonged to Mrs. Wisener and not to the trust. Under these circumstances, Jim and John, as beneficiaries of the trust and as co-trustees, have no interest in the property at issue. Accordingly, they have no standing to maintain the claim.

██ Jim and John insist, however, that the RESTATEMENT (SECOND) OF TRUSTS, § 200, cmt. e (1959), supports their claim to standing. That comment states:

> If there are several trustees, one or more of them can maintain a suit against another to compel him to perform his duties under the trust, or to enjoin him from committing a breach of trust, or to compel him to redress a breach of trust committed by him. A trustee is not precluded from maintaining such a suit by the fact that he himself participated in the breach of trust, since the suit is on behalf of the beneficiary.

This provision is rendered inapposite to the case at hand by the finding that the income was not a part of the trust; rather, the income belonged to Mrs. Wisener. Thus, the suit brought by Jim and John is not maintained on behalf of a beneficiary of the trust as there is no trust property at issue. Furthermore, the RESTATEMENT (SECOND) OF TRUSTS, § 214 cmt. b (1959), states:

> A particular beneficiary cannot maintain a suit for a breach of trust which does not involve any violation of duty to him. Thus if the breach of trust consists only in the failure to pay income to a life beneficiary, the beneficiary entitled to the principal cannot maintain a suit for breach of trust. So also, where the breach of trust is merely in the failure to make trust property productive and the principal is in no way affected, the life beneficiary but not the remainderman can maintain a suit.

Consequently, any attempt by Jim and John to maintain this action in their capacities as remaindermen entitled to the principal of the trust is also unavailing. Finally, Jim and John contend that Judy failed to prove a valid *inter vivos* gift by Mrs. Wisener from income produced by the trust. Such a contention is rendered moot by their lack of standing to prosecute this action.

## II. The Agreement to Equalize

On December 7, 1988, Jim, John, and Judy executed an agreement whereby they stated that "any indebtedness owing to the trust by any of the trustees as their individual obligation or any such obligation owing to the Warren Bank and Trust Company or any other party, which is secured by property of the Trust, that shall be outstanding and unpaid at the date of distribution of the Trust, shall be counted as and constitute a portion of the share and distribution to which each such Trustee-Beneficiary shall be entitled and that such amount, including any interest due, shall diminish the distribution to such beneficiary." The agreement was made, according to its preamble, because the trustees had "with the concurrence of the other Trustees and the lifetime beneficiary, used certain trust property as security for certain obligations of the Trustees individually." For their second point on appeal, Jim and John argue that the trial court erred by not requiring Judy to restore to the trust, pursuant to this agreement, any excess disbursements made to herself or her family from income generated by the trust during Mrs. Wisener's lifetime.

The plain language of the agreement clearly limits its application to obligations "secured by the property of the Trust." We have already determined that the income generated by the trust was the property of Mrs. Wisener and not the property of the trust. Consequently, the terms of the agreement do not apply to the distribution of funds from the income.

Furthermore, all three trustees testified at trial that they executed the agreement because they had all received personal loans secured by the trust property, i.e. timberland. The purpose of the agreement, according to the testimony of all three trustees, was to ensure that, when the trust was distributed, any property encumbered by one of their personal loans would be distributed to the one who created the encumbrance and that, if a lien resulted against trust property because of one trustee's failure to make payments on a loan secured by that property, the lien would attach only to that trustee's portion of the trust property upon distribution.

 The trial court ordered the partition of the trust property and the equalization of post-mortem distributions from the income produced by the real property that had been the trust property. In so doing, the trial court has given effect to the 1988 agreement to equalize to the extent it is applicable to the present situation. Jim and John have offered no authority or convincing argument to support their assertion that the agreement should be extended to require equalization of pre-mortem distributions made from the income reserved to Mrs. Wisener. We hold that the trial court did not clearly err in refusing to order equalization of the pre-mortem distributions pursuant to the 1988 agreement.

Affirmed.