GHEGAN & GHEGAN, INC., On Behalf of Itself
and All Taxpayers Similarly Situated *v.*
Richard A. BARCLAY, Director of the Arkansas
Department of Finance and Administration

01-15 49 S.W.3d 652

Supreme Court of Arkansas
Opinion delivered July 9, 2001

516

*Timothy Davis Fox, PLLC*, by: *Timothy Davis Fox*; and *Will Bond*, for appellants.

*William E. Keadle*, for appellee.

R AY THORNTON, Justice. This is an illegal-exaction case that involves a challenge on equal protection grounds of the constitutionality of portions of the Soft Drink Tax Act ("Act"),

which is codified at Ark. Code Ann. § 26-57-901 *et seq.* (Repl. 1997). We previously considered in *Ghegan v. Weiss*, 338 Ark. 9, 991 S.W.2d 536 (1999), the question whether Ghegan & Ghegan, Inc. ("Appellant" or "Ghegan"), had standing to bring an action based upon allegations of violations of constitutional requirements of equal protection. *Id.* Upon reviewing the trial court's granting of the Department of Finance and Administration's ("DFA") motion to dismiss for lack of standing, we concluded that accepting Ghegan's allegations in the light most favorable to the plaintiff, the matter should not be summarily dismissed, but Ghegan should be given the opportunity to present evidence in support of its claims because the traditional standing requirements had been met. *Id.*

A trial then ensued in the Pulaski County Chancery Court, at the conclusion of which the chancellor found that Ghegan had failed to establish that the disparity between the taxes imposed upon syrups used in making soft drinks and the taxes imposed upon both finished soft drinks made from powders and bottled soft drinks resulted in an unconstitutional violation of the Equal Protection Clauses of the Fourteenth Amendment to the Constitution of the United States or Article 2, Section 3, of the Constitution of the State of Arkansas. Appellant argues that a rational basis test is applicable, and further argues that: (1) the trial court erred in its determination that the Act does not treat persons differently, (2) the trial court erred in its determination that there are rational bases for the discrimination against retailers selling soft drinks made from syrup, (3) the DFA is violating the Act and its own regulation by taxing cherry syrup and vanilla syrup used to flavor soft drinks, and (4) the Act's border city exemption as written violates equal protection. We find no reversible error and affirm.

Ghegan is a corporation that runs a small pizzeria in Hot Springs and is a retailer that sells soft drinks made from syrup. During the pendency of this litigation, Ghegan has sold both Coca-Cola soft drinks made from syrup and Pepsi soft drinks made from syrup. Ark. Code Ann. § 26-57-904 (Repl. 1997) provides, in relevant part:

> (a) There is hereby levied and there shall be collected a tax upon every distributor, manufacturer, or wholesale dealer, to be calculated as follows:
>
> > (1) Two dollars ($2.00) per gallon for each gallon of soft drink syrup or simple syrup sold or offered for sale in the State of Arkansas;

(2) Twenty-one cents (21¢) per gallon for each gallon of bottled soft drinks sold or offered for sale in the State of Arkansas;

(3) Where a package or container of powder or other base product, other than a syrup or simple syrup, is sold or offered for sale in Arkansas, and the powder is for the purpose of producing a liquid soft drink, then the tax on the sale of each package or container shall be equal to twenty-one cents (21¢) for each gallon of soft drink which may be produced from each package or container by following the manufacturer's directions. This tax applies when the sale of the powder or other base is sold to a retailer for sale to the ultimate consumer after the liquid soft drink is produced by the retailer.

(b)(1) Any retailer or retail dealer, who purchases bottled soft drinks, soft drink syrup, simple syrup, powder, or base product from an unlicensed distributor, manufacturer, or wholesale dealer shall be liable for the tax levied in subsection (a) of this section on those purchases.

. . . .

*Id.*

Under Ark. Code Ann. § 26-57-904, Ghegan and all other persons who purchase concentrated syrup, to be mixed with water for use as a soft drink, must pay a tax of $2.00 per gallon of concentrated syrup. This tax is levied on the concentrated syrup regardless of the amount of soft drink made from the syrup. Retailers that sell bottled soft drinks pay a soft-drink tax of $.21 per gallon of soft drink. Retailers that use powder to make a resulting soft drink pay a soft-drink tax of $.21 per gallon of finished product, based upon how many gallons of soft drink should be produced from the powder, assuming that it is mixed according to the manufacturer's mixing directions. With regard to soft drinks made from concentrated syrup, the manufacturers recommend ratios of 4.75:1, 5:1, or 5.25:1 when mixing syrup with water, depending on the manufacturer and whether the soft drink is a diet or sugar soft drink, but these ratios are not mandatory. If mixed according to the suggested ratios, testimony shows that the computation of the effect of the $2.00 tax upon each gallon of concentrated syrup would be equivalent to a tax between $.32 and $.35 per gallon, for each gallon of finished product.

Appellant brought a declaratory judgment action seeking a declaration, in relevant part, (1) that Ark. Code Ann. § 26-57-904 is unconstitutional as being violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and of Article 2, Section 3, of the Arkansas Constitution and, thus, null and void, (2) that an accounting be ordered, (3) that an interest bearing escrow account be established, and (4) that such escrow account be held pending further court order.

At the conclusion of the trial, the trial court found that Ark. Code Ann. § 26-57-904 is not unconstitutional as being violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution or Article 2, Section 3, of the Arkansas Constitution because Ghegan failed to establish that any disparity in the taxing of soft-drink syrups and soft-drink powders resulted in an illegal discrimination between persons similarly situated and denied and dismissed appellant's complaint for declaratory judgment. It is from this order that appellant brings this appeal.

*I. The Trial Court Did Not Err in its
Determination That the Soft Drink Tax
Act Does Not Treat Persons Differently*

■ ■ We review decisions of the chancery court *de novo*, but we do not set aside findings of fact unless they are clearly erroneous. *E.g., Wisener v. Burns*, 345 Ark. 84, 44 S.W.3d 289 (2001) (citing *Kinghorn v. Hughes*, 297 Ark. 364, 367, 761 S.W.2d 930 (1988)); *Lotz v. Cromer*, 317 Ark. 250, 878 S.W.2d 367 (1994). We also review issues of statutory construction *de novo*, as it is for us to decide what a statute means. *Barclay v. First Paris Holding Co.*, 344 Ark. 711, 42 S.W.3d 496 (citing *Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999)).

■ The burden of showing a violation of equal protection is very high. Our understanding of this principle was illuminated by the Supreme Court in *Madden v. Commonwealth of Kentucky*, 309 U.S. 83 (1940), where the Court stated, "The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized." *Id.* "[T]he presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against persons and classes." *Id.*

In *Davies v. City of Hot Springs*, 141 Ark. 521, 217 S.W. 769 (1920), we stated, "The only restriction which the law imposes on the exercise of power is that there shall not be a discrimination between persons in like situations and pursuing the same class of occupation." *Id.* (citing *Waters-Pierce Oil Co. v. Hot Springs*, 85 Ark. 509, 109 S.W. 293 (1908)). In addition, in *City of Ft. Smith v. Scruggs*, 70 Ark. 549, 69 S.W. 679 (1902), we stated, "But the rule of equality only requires that the tax shall be collected impartially of all persons in similar circumstances." *Id.*

We have outlined on numerous occasions the elements that are necessary in order to determine whether an equal protection challenge is warranted. In *Pledger v. Featherlite Precast Corp.*, 308 Ark. 124, 823 S.W.2d 852 (1992), we stated, "In deciding whether an equal protection challenge is warranted, there must first be a determination that there is a state action which differentiates among individuals." *Id.* (quoting *Bosworth v. Pledger*, 305 Ark. 598, 810 S.W.2d 918 (1991)). "No state shall ... deny to any person within its jurisdiction the equal protection of the laws." *Bosworth, supra* (quoting U.S. Const. amend. 14). The federal equal protection clause prohibits arbitrary classifications by the state resulting in different treatment of persons similarly situated in the exercise of its powers. *Streight v. Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983).

With regard to appellant's designated "Point I" on appeal, we note that the "rational basis" test is not relevant unless there is a disparate tax treatment between persons similarly situated. Only if there exists a discrimination between persons similarly situated is it necessary that a rational basis for such discrimination be established. *Bosworth, supra*. Accordingly, we first address appellant's designated "Point II" that the trial court erred in its determination that the Act does not treat persons differently. Appellant argues that the trial court's finding that the discrimination is against products, not people, is contrary to the definitions in the Act, to the testimony and evidence, to the findings made by the trial court, to the law of the case, as well as being contrary to the border city tax statutes. We will briefly address each of these points before turning our attention to the underlying issue whether the trial court's findings were contrary to the facts and the applicable law as articulated in our case law on this issue.

## A. Trial Court's Findings of Fact

Appellant contends that the trial court's legal conclusion that the discrimination is against products, not people, is contrary to the findings of fact issued by the trial court. Appellant cites paragraph 7 of the trial court's order in support of its argument, where the trial court stated "that retailers who sell soft drinks produced by syrup pay a higher tax *per gallon of soft drink produced* than retailers who sell bottled soft drinks or soft drinks by powder." (Emphasis supplied.) Appellant asserts that this finding of fact is contrary to the trial court's determination that the discrimination is against products, not people. We disagree.

The language appellant relies on for its assertion is taken out of the context of the trial court's order. Paragraphs 6 and 7 of the trial court's order provide, in relevant part:

> Plaintiff has attempted to classify a retailer who sells soft drinks that are made from syrup as a different class of persons than a retailer who sells bottled soft drinks or soft drinks that are made from powder. The retailer makes a choice regarding the form of the product it elects to sell to the consumer.... It is the taxing of the form of the product about which the plaintiff complains, not that it is treated differently than any other person subject to the Soft Drink Tax, as a result of the tax. The plaintiff has consistently assumed that it was a purpose of the legislation to equally tax a resultant gallon of soft drink. As pointed out to the plaintiff at the summary judgment hearing, nowhere in the statute does it state such a purpose. However, the court will address the issue as the plaintiff presents it.
>
> 7. The plaintiff has failed to meet its very high burden by simply proving that retailers who sell soft drinks produced by syrup pay a higher tax per gallon of soft drink produced than retailers who sell bottled soft drinks or soft drinks produced by powder.

■ The trial court's recitation of appellant's claim "that retailers who sell soft drinks produced by syrup pay a higher tax per gallon of soft drink produced than retailers who sell bottled soft drinks or soft drinks produced by powder" was made after first pointing out that such a showing did not meet the burden of establishing discrimination between persons. It is clear from the context of both paragraphs 6 and 7 that the trial court disagreed

with appellant's contention that individuals are being taxed differently, not products. Therefore, we find no merit in appellant's argument that the trial court's findings of fact were contrary to the trial court's conclusion that the discrimination is against products, not people.

### B. "Border City" Tax Provision As Controlling the Imposition of Soft-Drink Taxes

Appellant next contends that the trial court's determination that the discrimination is against products, not people, is contrary to the "border city" tax provision of the Act. Specifically, appellant contends that Ark. Code Ann. § 26-57-907 (Repl. 1997) provides further evidence that this is not a case involving differentiation between products, but between individuals, in this case, retailers. That section provides, in relevant part:

> (a) If a distributor, manufacturer, or wholesale dealer sells bottled soft drinks, soft drink syrups, powders, or base products to retailers or retail dealers located in a city or incorporated town which is subject to the border city tax rate provided in § 26-52-303, then the tax shall be at the same rate as imposed by the adjoining state on distributors, manufacturers, or wholesale dealers, not to exceed the rate imposed by § 26-57-904.

*Id.*

We are not persuaded by appellant's attempt to utilize Ark. Code Ann. § 26-57-907, a statutory section regarding an exemption, to illustrate its contention that the trial court's determination that the discrimination is against products, not people, is contrary to the "border city" tax provision of the Act. It is true that Ark. Code Ann. § 26-57-907 provides a benefit to retailers located in a border city or incorporated town, and is thus a benefit to individuals. However, an exemption for an individual can apply to a tax that is imposed on products or services as well.

For example, Ark. Code Ann. § 26-52-401 (Supp. 1999) provides exemptions for sales by churches and charitable organizations, which can be viewed as exemptions for individuals. *See id.* However, Ark. Code Ann. § 26-52-401 also provides an exemption for sales of certain products, such as newspapers and certain publications, regardless of the identity of the seller or buyer. *See id.*

■ Because it is clear that an act can provide for both exemptions for individuals and on products and services at the same time, and vice versa, one cannot determine the nature of a tax by looking at an exemption provision. Consequently, appellant's argument that, because the border city tax provision of the Act refers to individuals, this indicates that the Act discriminates against individuals, not products, must fail.

## C. Law of the Case

■ ■ Appellant also argues that the trial court's determination that the discrimination is against products, not people, is contrary to the law of the case. It is well settled that the decision on the first appeal becomes the law of the case, and is conclusive of every question of law or fact decided in the former appeal. *Morris v. Garmon*, 291 Ark. 67, 722 S.W.2d 571 (1987). In support of its argument, appellant cites our decision in the prior appeal of this case in *Ghegan v. Weiss*, 338 Ark. 9, 991 S.W.2d 536 (1999). However, in *Ghegan, supra,* we were only addressing the issue whether Ghegan had standing to bring an illegal-exaction challenge under Article 16, Section 13 of the Arkansas Constitution. *See Ghegan, supra.* We stated:

> The sole issue on appeal is whether the trial court erred when it ruled that Ghegan did not have standing under Article 16, Section 13, of the Arkansas Constitution to challenge the constitutionality of section 26-57-904(a) of the Arkansas Soft Drink Tax Act. When reviewing a trial court's ruling on a motion to dismiss under Ark. R. Civ. P. 12(b)(6), we treat the facts alleged in the complaint as true and view them in the light most favorable to the party who filed the complaint.

*Id.* (citations omitted). Applying our standard of review regarding motions to dismiss, we based our ruling only on the allegations made in the complaint, and our decision was limited to the context of whether appellant had met the general requirements necessary for standing to warrant our reversal of the trial court's order granting appellee's motion to dismiss. *See id.* We were not addressing the merits of appellant's substantive arguments. In the context of a standing case, appellant was not required to prove any individual disparate treatment necessary to support an equal protection violation claim. Nor were we providing a ruling on a substantive equal protection claim that was not properly before us. Accordingly, we hold that the trial court's determination that the discrimination is

against products, not people, is not contrary to the law of the case in *Ghegan, supra.*

### D. Definitions Enacted by the General Assembly in the Soft Drink Tax Act

Appellant also contends that the trial court's determination that the discrimination is against products, not people, is contrary to the definitions enacted by the General Assembly in the Act. Appellant contends that the only difference between the definitions of "powder" and "syrup" is that "powder" is a "solid" and "syrup" is a "liquid," but that the two definitions are the same in all other respects.

The definitions for "powder" and "syrup" are provided in Ark. Code Ann. § 26-57-902 (Repl. 1997), and state, as follows:

> (10) "Powder" or "other base" means *a solid mixture of basic ingredients used in making, mixing, or compounding soft drinks* by mixing the powder or other base with water, ice, syrup or simple syrup, fruits, vegetables, fruit juice, vegetable juice, or any other product suitable to make a complete soft drink.
>
> . . . .
>
> (15) "Syrup" means the *liquid mixture of basic ingredients used in making, mixing, or compounding soft drinks* by mixing the syrup with water, simple syrup, ice, fruits, vegetables, fruit juice, vegetable juice, or any other product suitable to make a complete soft drink.

*Id.* (emphasis added). Appellant contends that because the wording of these two definitions are so similar, "[t]he General Assembly has legislatively defined 'powder' and 'syrup' as the exact same thing, 'a mixture of basic ingredients used in making, mixing, or compounding soft drinks.' "

As authority for its argument, appellant relies on our decision in *Bird v. Pan Western Corp.*, 261 Ark. 56, 546 S.W.2d 417 (1977), where we stated that "in construing an act, the courts are bound by specific definitions of a word by the legislature in that act.... " *Id.* Appellant also cites *Quaker City Cab Co. v. Commonwealth of Pennsylvania*, 277 U.S. 389 (1928), where the Supreme Court held that the practical operation of the section levying tax is to be regarded

and dealt with according to its effect. *Id.* (citing *Frick v. Pennsylvania*, 268 U.S. 473 (1925); *Panhandle Oil Co. v. Mississippi*, 277 U.S. 218 (1928)). Appellant asserts that because of the decision in *Quaker City Cab Co., supra*, we should look to the practical operation of the soft-drink tax legislation, which, they assert, is to levy a substantially higher soft-drink tax against retailers making soft drinks from syrup than is levied against retailers making soft drinks from powder.

We note that the cases cited by appellant do not support its assertion that because the definitions of "powder" and "syrup" are similar, the General Assembly has legislatively defined these words as the exact same thing. For example, *Bird, supra*, dealt with the issue of whether a subcontractor who was not licensed as a contractor under Arkansas law could claim money for work under a contract, and we held that the subcontractor met the definition of "contractor" by the nature of the work that it did, but that since the subcontractor was not licensed, it could not prevail in its claim for money under the contract. *Id.* In addition, the quotation appellant cites from *Bird, supra*, is taken out of its context. The full quotation states:

> The ordinary and generally accepted meaning of words used in a statute must yield to the meaning intended by the General Assembly when it is clear from the context of the act that a different meaning is intended. Thus, in construing an act, the courts are bound by specific definitions of a word by the legislature in that act, regardless of the usual and ordinary meaning of that word; unless the definition is arbitrary, creates obvious incongruities in the statute, defeats a major purpose of the legislation or is so discordant to common usage as to generate confusion.

*Id.* This quotation lends more credence to the proposition that the tax is one on products, not individuals, because the words are to be construed in the context of the Act, and in the present case, it is clear from the context of Ark. Code Ann. § 26-57-901 *et seq.* that two different products were intended. We further note that Ark. Code Ann. § 26-57-904 specifically distinguishes syrups from powders in its imposition of taxes.

In addition, *Quaker City Cab Co., supra*, which appellant cites for the proposition that the practical operation of the section levying the tax is to be regarded and dealt with according to its effect, is factually distinguishable to the present case. In that case, the Court invalidated a Pennsylvania statute that imposed a tax on

the gross receipts derived by corporations from their operation of taxicabs in intrastate transportation of passengers, while not taxing the like receipts of individuals and partnerships in the same kind of business. *Id.* The Court found this tax to be in violation of equal protection, stating that valid tax classification cannot rest solely on the character of the taxicab operator as being corporate or non-corporate when there is no other difference in the situation or the circumstances of the operators. *Id.* On the other hand, in this case, the trial court found that appellants were purchasing different products, and that it was the products that were taxed differently. Here, unlike in *Quaker City Cab Co., supra,* the applicable tax on syrups, powders, and soft drinks is the same for all customers, regardless of the character of the purchaser. Finding no reversible error, we affirm on this subpoint.

## E. Case Precedent

Having concluded that there is no merit in appellant's contentions on these subpoints, we turn our attention to an analysis of the statutes and case law as applied to the factual circumstances of the case before us. Appellant strongly contends that the trial court's finding that the facts do not show a different treatment of persons is contrary to applicable case law, and, accordingly, must be reversed. We disagree. The trial court found:

> The Soft Drink Tax statutes do not treat retailers–or the distributors, wholesalers, or manufacturers–differently. All are taxed the same. They have to pay $2.00 on every gallon of syrup; $.21 on every gallon of bottled drink; and $.21 on every gallon of soft drink produced by powder. It is the product that is taxed differently. Plaintiff has attempted to classify a retailer who sells soft drinks that are made from syrup as a different class of persons than a retailer who sells bottled soft or soft drinks that are made from powder. The retailer makes a choice regarding the form of the product it elects to sell to the consumer. Plaintiff sells Coca–Cola fountain drinks by mixing syrup with carbonated water in a machine. Thus, it pays the $2.00 per–gallon–of–syrup tax. Plaintiff could sell Coca–Cola soft drinks in cans, bottles, or even "premix," which is the same product as the soft drink produced by syrup on location, and pay the $.21 per–gallon–of–soft–drink tax. It is the taxing of the form of the product about which the plaintiff complains, not that it is treated differently than any other person subject to the Soft Drink Tax, as a result of the tax.

The trial court's analysis is consistent with our decision in *Potts v. McCastlain*, 240 Ark. 654, 401 S.W.2d 220 (1966), *cert. denied*, 385 U.S. 946 (1967). *Potts, supra*, involved an equal protection challenge to a privilege tax statute imposing automobile licensing fees of (1) $75.00 for taxicabs (five-passenger cars for hire); (2) $19.00 for other five-passenger cars (pleasure vehicles) of the same weight category as taxicabs; (3) $15.00 for city buses of much greater weight; and (4) special consideration by a reduction of license fees for vehicles hauling natural resources. *See id*. In upholding the statute, we stated, "In the case at bar the statute applies equally and without discrimination to all persons of the classification made and thereby taxed." *Id*.

Appellant contends that the trial court failed to follow our opinion in *Bosworth v. Pledger*, 305 Ark. 598, 810 S.W.2d 918 (1991) in reaching its conclusion that the soft-drink tax discriminates against products, not people. We disagree. *Bosworth, supra*, involved an equal protection challenge to the Arkansas gross-receipts tax on long distance telephone service. *See id*. The gross-receipts tax statute, which is codified at Ark. Code Ann. § 26-52-301 (Supp. 1999), imposed a tax on subscribers to "regular" long distance telephone service, those who are billed on a per-call basis. *Bosworth, supra*. However, that statute specifically exempted from taxation those subscribers who purchased long distance telephone service in bulk, thereby according a tax advantage based upon the amount of service purchased through a WATS agreement. *See id*. WATS service, where the subscriber is charged a flat fee for the service, receiving then a lower rate for each call made or received, is entirely exempted from the tax. *See id*. We ultimately held that the imposition of tax upon some subscribers while exempting other subscribers from payment of any tax was discriminatory, but did not violate equal protection because there was a rational basis for the disparate tax rate. *See id*. We first addressed the question whether there was a state action that differentiated among individuals and concluded that there was. *See id*. The Director of the DFA argued that discrimination between individuals was not shown because the only distinction made by the taxation statute was between services, not people, and cited our decision in *Potts, supra*. *See Bosworth, supra*. We concluded that the imposition of taxes upon some members of the pool of subscribers for long distance service, while exempting other members of that pool from any payment of taxes for long distance services, was disparate treatment requiring a rational basis. *See id*.

We note that we did not overrule *Potts, supra,* in our *Bosworth* decision, thereby suggesting, as we now conclude, that the principles articulated in the two cases can be harmonized and applied to the case now under review. In *Bosworth, supra,* we were required to decide whether the state could discriminate by imposing taxes upon some of its long distance telephone subscribers while exempting other purchasers of long distance bulk telephone service from payment of any taxes without being required to show a rational basis for that discrimination. *See id.* We concluded that the taxes levied discriminated between individuals similarly situated, but found that the disparate treatment was not unconstitutional because there was a rational basis. *See id.* We ultimately held that the state could rationally impose a tax upon one group of long distance telephone service subscribers while imposing no tax upon another group of long distance telephone service subscribers. *See id.* By contrast, *Potts, supra,* applied the same $75.00 license tax to all taxicabs, the same $19.00 license tax to all private automobiles, and the same $15.00 license tax to all buses. *Id.*

■ In the case now before us, the same tax, $2.00 per gallon of syrup, is assessed on each gallon of concentrated syrup sold, whether to Ghegan or to any other purchaser of that product. No reduction or remission of the $2.00 per gallon tax is made as a result of the volume of syrup purchased by an individual customer. Every customer pays a tax of $.21 per gallon of finished soft-drink product in cans or bottles and a tax of $.21 per gallon of finished soft drinks that are mixed from powder in accordance with manufacturer's suggested directions. No person is exempted from payment of exactly the same taxes imposed upon the particular product purchased, except border-city sales. Ghegan has the choice whether to purchase syrup, powder, or finished soft drinks, and is not restricted from making any selection he may prefer, and all other dealers have exactly the same choices. Accordingly, we agree with the trial court that "[t]he Soft Drink Tax statutes do not treat retailers-or the distributors, wholesalers, or manufacturers-differently. All are taxed the same. They have to pay a tax of $2.00 on every gallon of syrup; $.21 on every gallon of bottled drink; and $.21 on every gallon of soft drink produced by powder."

We conclude that the trial court did not commit error in its determination that appellant has not met the burden of showing a disparate tax upon persons or classes. Therefore, it is not necessary for us to further explore appellant's designated "Point I" and "Point III" relating to the question whether a rational basis exists to justify the different tax rates upon concentrated syrups, finished soft

drinks, or powders used to mix finished soft drinks. Every retailer pays exactly the same tax upon the product that is purchased, and is free to choose what product he desires to buy — there is no discrimination between individuals.

## II. Cherry and Vanilla Syrup

Appellant next argues that the DFA is violating the Act and its own regulation by taxing cherry syrup and vanilla syrup that is used to flavor soft drinks. As authority for its argument, appellant cites Soft Drink Tax Regulation 1993-8, which was promulgated by the DFA, and states, in relevant part,

> 17. ..."Soft drink" does not includes products used solely for coloring or flavoring other beverages.

*Id.* Appellant also cites paragraph 7 of the trial court's order, which cited testimony from Mr. Jim Wright, an auditor for the Miscellaneous Tax Division of the DFA:

> Mr. Jim Wright, an auditor for the Miscellaneous Tax Division of the Department of Finance and Administration, testified, there are other taxed syrups, like cherry and vanilla, which are used in fountain drinks by adding a "dab" to the finished drink for flavor and that attempting to tax the type of syrup per gallon produced would be difficult.

We first note that the abstract indicates that this issue was never raised in the trial court. It is well settled that an argument that was never raised below will not be considered for the first time on appeal. *E.g., Qualls v. White*, 342 Ark. 681, 30 S.W.3d 735 (2000) (citing *Western Foods, Inc. v. Weiss*, 338 Ark. 140, 992 S.W.2d 100 (1999)).

Moreover, the trial court did not issue a ruling on this argument in its order. It is well settled that issues not ruled on below will not be considered on appeal. *E.g., Junkin v. Northeast Arkansas Internal Medicine Clinic*, 344 Ark. 544, 42 S.W. 3d 432 (2001) (citing *Flowers v. State*, 342 Ark. 45, 25 S.W.3d 422 (2000)). The portion of the testimony cited in the trial court order did not consider the argument that the DFA was violating its own regulations by imposing a tax on cherry syrup and vanilla syrup used to flavor soft drinks. It is clear from reading this portion of the trial court's order in context that the trial court was not ruling on the

issue whether the DFA is violating the Act and its own regulation by taxing cherry syrup and vanilla syrup that is used to flavor soft drinks. Rather, the trial court cited this testimony with regard to its finding that appellant had failed to meet its burden of proving that the State did not have a rational basis for the discrimination. We further note that appellant concedes the appealability of this issue in its brief when it states, "These problems are not for consideration in this appeal and will no doubt be considered on another day if DFA doesn't voluntarily decide to assess tax in accordance with the Act as written." Because this issue has not been preserved, we cannot address its merits on appeal.

### III. Border City Tax Exemption As Violation of Equal Protection

 Appellant finally argues that the border city exemption provided in Ark. Code Ann. § 26-57-907, as written, violates equal protection. However, we note that appellant has failed to preserve this issue for appeal because the language of the trial court's order indicates that the trial court did not rule on the constitutional argument. The trial court's order states:

> The court has had some difficulty understanding plaintiff's border tax exemption argument. As the state points out, the Arkansas Supreme Court has upheld the legitimacy of economic border town incentives. *Boyd v. Weiss*, 333 Ark. 684, 971 S.W.2d 237 (1998). Plaintiff contends that the "application of the border city rate is determined exclusively by whether the 'retailer' is 'located in a city or incorporated town which is subject to the border city tax rate.' " The fact that the retailer, and not the wholesaler, is located in the border city is the reason for the border tax exemption. The purpose of the border tax exemption is to promote the economic security of retailers so that, as a result of the tax, they will not have to charge prices that are higher than a competitor in the border state. The exemption benefits, not penalizes, the retailer.

Having made these general observations, the trial court did not rule on whether the border tax exemption violates equal protection, and appellant did not seek a clarification or insist upon a ruling upon this issue. It is well settled that issues not ruled on below will not be considered on appeal. *E.g., Junkin, supra* (citing *Flowers v. State*, 342 Ark. 45, 25 S.W.3d 422 (2000)). Because this issue has not been preserved, we cannot address its merits on appeal.

Finding no reversible error, we affirm.

BROWN, J., concurs.

CORBIN, J., dissents.

R OBERT L. BROWN, Justice, concurring. I agree with the majority opinion that the chancellor's order should be affirmed. However, I am unpersuaded by the majority's futile attempt to distinguish the case of *Bosworth v. Pledger*, 305 Ark. 598, 810 S.W.2d 918 (1991), from this case. Thus, I find it necessary to analyze Ghegan's equal protection argument.

In *Bosworth, supra*, we examined the constitutionality of a 1987 Act of the General Assembly which excepted WATS long distance telephone service from the state sales tax. The appellants argued that this discriminated against long distance subscribers who did not subscribe to the WATS service. We examined the question of whether the imposition of the long distance tax discriminated among individuals or whether discrimination did not occur because individuals were simply choosing a different long distance service which was available to any customer. We said:

> Appellees argue that the threshold element of classification of individuals is not met because the only distinction made by the statute is between *services*, not people. Appellees cite *Potts v. McCastlain*, 240 Ark. 654, 401 S.W.2d 220 (1966), *cert. denied*, 385 U.S. 946 (1967), where this court upheld a privilege tax imposed on taxicabs but not on other vehicles using the same streets. They argue that as long as all "regular" long distance subscribers are taxed the same, just as all taxicab operators were taxed the same, there is no differentiation among individuals, all being treated equal. In addition, appellees cite the chancellor's finding that "all three types of service—MTS, private line, and WATS—are available to any customer; there are no eligibility requirements," to bolster their argument that this is a tax imposed on services, not individuals.

> Although it is true that the tax is imposed on one type of long distance service and not another, it is also true that taxes are paid by individuals, and the record reflects that subscribers to "regular" long distance service pay the tax, while subscribers to WATS service do not. This disparate treatment under the statute of classes of individuals is sufficient to raise the equal protection challenge and require our further analysis.

*Bosworth*, 305 Ark. at 604, 810 S.W.2d at 920-21.

Similarly, in the case at bar, the Tax Code provides that the distributor of the soft drinks is taxed, not the product:

> (a) There is hereby levied and there shall be collected a tax upon every distributor, manufacturer, or wholesale dealer, to be calculated as follows:

> (1) Two dollars ($2.00) per gallon for each gallon of soft drink syrup or simple syrup sold or offered for sale in the State of Arkansas;

> (2) Twenty-one cents (21¢) per gallon for each gallon of bottled soft drinks sold or offered for sale in the State of Arkansas;

> (3) Where a package or container of powder or other base product, other than a syrup or simple syrup, is sold or offered for sale in Arkansas, and the powder is for the purpose of producing a liquid soft drink, then the tax on the sale of each package or container shall be equal to twenty-one cents (21¢) for each gallon of soft drink which may be produced from each package or container by following the manufacturer's directions. This tax applies when the sale of the powder or other base is sold to a retailer for sale to the ultimate consumer after the liquid soft drink is produced by the retailer.

Ark. Code Ann. § 26-57-904(a) (Repl. 1997). Moreover, although all retailers are taxed a certain amount depending upon the product purchased, there appears to be disparate treatment among the amounts taxed, that is, $2.00 per gallon of syrup regardless of the amount of product produced; $ .21 per gallon for each gallon of bottled soft drink sold or offered for sale; and $ .21 for each gallon of soft drink that may be produced from powder pursuant to the manufacturer's directions. This disparate treatment among retailers is sufficient, in my judgment, to raise Ghegan's equal protection challenge.

In *Medlock v. Leathers*, 311 Ark. 175, 842 S.W.2d 428 (1992), this court discussed the power to tax and classifications which invidiously discriminate:

> "Inherent in the power to tax is the power to discriminate in taxation." *Leathers,* ___ U.S. at ___, 111 S. Ct. at 1446. Courts should defer to local legislative determinations as to the desirability

of imposing discriminatory measures. *City of New Orleans v. Dukes*, 427 U.S. 297 (1976). A court will not strike down a classification merely because it is underinclusive. The law must be "purely arbitrary" in its classification; thus the only classification not allowed in taxing is invidious discrimination. *Id.* If a taxation statute discriminates in favor of one class it is not determined to be arbitrary so long as the discrimination is based upon a reasonable distinction, and if there is any hypothesized set of facts to uphold a rational basis. *Streight v. Ragland*, 280 Ark. 206, 655 S.W.2d 459 (1983). Appellants argue that hypothesizing a rational basis, as in *Streight,* should be beyond the power of this court. We view hypothesizing a rational basis the same as conceiving a rational basis; a practice that is available to the courts without question. We point to the language of *Streight* and conclude that any rational basis for a taxation statute may be developed at any time.

> In any event, the judiciary is allowed to hypothesize and . . . reach a conceivable basis for the exemptions which [it] conclude[s] are rational, reasonably distinctive and not arbitrary. It causes us to defer to legislative purpose because there is a rational basis for the tax. . . .
>
> . . . .
>
> Before it is said that such hypothesizing is far afield, we re-emphasize that our role is not to discover the *actual basis* for the legislation. Our task is merely to consider if *any* rational basis exists which demonstrates the possibility of a deliberate nexus with state objectives so that the legislation is not the product of utterly arbitrary and capricious government and void of any hint of deliberate and lawful purpose.

*Streight,* 280 Ark. at 214-15, 655 S.W.2d at 464.

*Medlock,* 311 Ark. at 179-80, 842 S.W.2d at 430-31.

In the case before us, the chancellor concluded that "administrative convenience" qualified as a rational basis for treating the taxation of syrup, powder, and soft drinks differently:

> Clearly, the legislature could have assumed that taxing syrup by the gallon would have been easier to administer at the time the law was enacted. In fact, the testimony of Mr. Wright supported the State's argument. Syrup is sold only in one or five gallon measures, thereby making the tax quite simple to calculate. Bottled drinks are

sold in cans and a variety of sizes of bottles, but each container exhibits the volume of the soft drink. Soft drinks made from powders are sold in numerous and various containers and weights. Since there are somewhat limited taxpayers, the calculation of the number of gallons of soft drink produced has been easier. However, there is nothing in the record to indicate the General Assembly was aware of the ease with which gallons of soft drink could be calculated. The General Assembly could have concluded that gallons of syrup would be easy to calculate and tax, and that gallons of bottled soft drink would be easy to calculate and tax, but that gallons of soft drink produced by powders that vary greatly in weight and mixing instructions might be more difficult to compute. The court's task is not to discover the actual basis for the legislation but to determine whether there is any rational basis for the classification.

In my opinion, the chancellor correctly found a reasonable basis for the disparate treatment in taxing distributors who use different soft drink products. For that reason, I, too, would affirm the chancellor's order upholding the tax.

DONALD L. CORBIN, Justice, dissenting. I respectfully dissent because I believe that there is no rational basis for taxing retailers differently based upon whether the soft drinks they sell are made with powder or syrup. I concur with Justice Brown's opinion that the majority has failed in its attempt to distinguish the facts of this case from those in *Bosworth v. Pledger*, 305 Ark. 598, 810 S.W.2d 918, *cert. denied*, 502 U.S. 995 (1991). This case undoubtedly presents an issue of equal protection.

I believe, contrary to the trial court and the majority herein, that the Soft Drink Tax statutes *do* treat retailers or the distributors, wholesalers, or manufacturers differently. I see no rational basis that justifies the differing tax rates upon syrups, finished soft drinks, and powders used to mix finished soft drinks. While I can understand that it may be more convenient to assess the tax on powder mixes on the basis of how much finished product the mixes will produce, I fail to see why that amount should be less than that charged to retailers who use syrup to mix their soft drinks. The majority points out that, when broken down, the computation of the effect of the $2.00 tax upon each gallon of syrup would equal between $0.32 and $0.35 per gallon for each gallon of finished product. Meanwhile, the tax on soft drinks made with powder is only $0.21 per gallon of finished product. The State has offered no rational basis for this disparate taxing treatment, and I can see none.

Moreover, while I acknowledge the holding in *Medlock v. Leathers*, 311 Ark. 175, 842 S.W.2d 428 (1992), *cert. denied*, 508 U.S. 960 (1993), that our task is only to determine whether any rational basis exists, I do not believe that any such basis exists here. I am not questioning that it may be easier to calculate the tax on powder according to the amount of finished product it will make, while it may be easier to calculate the tax on syrup based on the amount of syrup in the container. However, I can see no rational reason why the end result of the tax should not be equal. Taxing retailers who use syrup to make soft drinks at a higher rate than those who use powder as a base is nothing but arbitrary.

Furthermore, I am not persuaded by the majority's suggestion that the retailer may avoid the higher tax by using powder, instead of syrup, to mix its soft drinks. This court has no idea what such a switch would entail, *i.e.*, whether it would require the retailer to purchase new equipment or to otherwise change its existing facility. Additionally, this ignores the personal preference of the retailer to choose the process it desires to manufacture the ultimate soft-drink product. The State should only be interested in taxing the ultimate product. Only then could the tax be fairly imposed. Because the current tax scheme treats these similarly situated retailers disparately with no rational basis, I must dissent.