Samuel MONDRAGON–GARCIA,
Appellant,

v.

STATE of Texas, Appellee.

No. 11–02–00228–CR.

Court of Appeals of Texas,
Eastland.

Jan. 15, 2004.

Samuel Mondragon Garcia, Abilene, Vicki Solomon, Rockwall, for appellant.

Bill Hill, District Attorney, Anne Wetherholt, Assistant Criminal Dist. Attorney–Appellate Section, Dallas, for appellee.

Panel consists of: WRIGHT, J., and McCALL, J., and McCLOUD, S.J.*

Opinion

AUSTIN McCLOUD, Senior Justice (Assigned).

The jury convicted Samuel Mondragon–Garcia of the offense of murder, made an

---

* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

affirmative deadly weapon finding, and assessed punishment at confinement for 35 years and a fine of $10,000. We affirm.

Appellant presents six points of error on appeal. In the first three points, which are argued together, appellant contends that the trial court erred in denying his motion to suppress evidence relating to the firearm that was found during a warrantless search of appellant's motel room. Appellant contends that the search violated the Fourth Amendment to the United States Constitution, the Texas Constitution, and Texas statutory law. We disagree.

In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Cr.App. 1997). Because the trial court is the exclusive fact finder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Cr.App.2000). We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman v. State, supra.* Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Guzman v. State, supra; Davila v. State,* 4 S.W.3d 844 (Tex.App.-Eastland 1999, no pet'n).

In the present case, the facts surrounding the search of appellant's motel room were uncontroverted. After voir dire, the trial court conducted a hearing on appellant's motion to suppress his written statement. Later, during the trial on the merits, it became clear that the weapon was initially located prior to the issuance of the search warrant in this case. Accordingly, appellant objected at that time that the weapon was originally found during an illegal, warrantless search of appellant's motel room and should be suppressed.[1] The trial court then conducted a hearing outside the jury's presence and overruled appellant's objection.

The record shows that federal agents had appellant under surveillance for reasons unrelated to this murder case. While the agents were watching appellant's room, Special Agent Santiago Moya telephoned appellant's motel room, explained that he was with the FBI, and asked ap-

---

1. We note that the State contends that the search and seizure was proper in this case because the search warrant was proper and because there was an "independent source," untainted by the warrantless search of the motel room, upon which the search warrant was based or could have been based. We disagree with the State's contention. First, we question whether the "independent source" doctrine, which is similar in nature to the "inevitable discovery" doctrine, is an exception to the Texas exclusionary rule, TEX. CODE CRIM. PRO. ANN. art. 38.23 (Vernon Pamph. Supp.2004). *See State v. Daugherty,* 931 S.W.2d 268 (Tex.Cr.App.1996)(inevitable discovery doctrine is an exception to the federal exclusionary rule, not the Texas exclusionary rule); *Garcia v. State,* 829 S.W.2d 796 (Tex.Cr.App.1992); *Oliver v. State,* 711 S.W.2d 442, 445 (Tex.App.-Fort Worth 1986, pet'n ref'd)(Texas does not recognize the independent source doctrine as an exception to Article 38.23), *cited in Garcia v. State, supra* at 799; *see also Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988)(discussing the independent source doctrine). Second, the issue in this case is the propriety of the initial warrantless search of the motel room during which the gun was discovered, not the validity of the subsequent warrant or the search and seizure pursuant to that warrant. The search warrant was not introduced into evidence and is not included in the record in this case. Accordingly, the case relied upon by the State, *State v. Bridges,* 977 S.W.2d 628 (Tex.App.-Houston [14th Dist.] 1998, no pet'n)(addressing the validity of the search warrant), is distinguishable.

pellant if he would come out and talk. A short time later, appellant opened the door, dressed only in his bikini underwear; looked at the agents; and took off running. When he fled, appellant left the door to the motel room ajar. The agents chased and caught appellant and then took him into custody based upon his status as an illegal alien. As they walked back toward the room, appellant admitted that he had drugs and a gun in the motel room. The agents entered the room to perform a protective sweep because they knew that appellant was not alone when he checked into the motel. Special Agent Salvador Orrantia of the Immigration and Naturalization Service located drugs in plain view on the bathroom counter. He also went "to where [he] would ... keep a gun," lifted up the mattress, and observed a gun between the mattress and the box springs. The agents did not seize the gun at that point, but informed Dallas police officers of the gun and its location. A search warrant was subsequently obtained, and the gun was seized. Agent Orrantia testified that the initial search of the room was performed without a warrant and without appellant's consent.

■ An occupant of a motel room is entitled to constitutional protections against unreasonable searches and seizures with respect to the motel room. *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); *Moberg v. State,* 810 S.W.2d 190, 194 (Tex.Cr.App. 1991). Generally, the warrantless search of a motel room is unreasonable. In order to justify such a warrantless search, the State must show that it had consent or that both probable cause and exigent circumstances existed at the time of the search, such as: (1) rendering aid or assistance to persons whom the officers reasonably believe are in need of assistance; (2) preventing the destruction of evidence or contraband; and (3) performing a protective sweep to protect the officers from persons whom they reasonably believe to be present and armed and dangerous. *McNairy v. State,* 835 S.W.2d 101, 106–07 (Tex.Cr.App.1991)(citing *Stewart v. State,* 681 S.W.2d 774, (Tex.App.-Houston [14th Dist.] 1984, pet'n ref'd)).

■ In this case, Agent Orrantia testified that he located the weapon while performing a protective sweep of the motel room. A protective sweep in conjunction with an in-home arrest is reasonable when the officer reasonably believes that the area to be swept harbors an individual posing a danger to the persons present at the scene. *Maryland v. Buie,* 494 U.S. 325, 333–37, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); *Reasor v. State,* 12 S.W.3d 813, 815–17 (Tex.Cr.App.2000). A full search of the premises is not authorized; the sweep must be limited to spaces where a person could be found. *Maryland v. Buie, supra; Reasor v. State, supra.* Under the circumstances in this case, including the agents' knowledge that at least two other people had been with appellant in the past hour or two, the agents were justified in performing a protective sweep of the motel room. However, Agent Orrantia's act of lifting up the mattress to look for the gun went beyond the scope of a permissible protective sweep. *See Maryland v. Buie, supra; Reasor v. State, supra; Ramirez v. State,* 105 S.W.3d 730 (Tex.App.-Austin 2003, no pet'n). Agent Orrantia did not reasonably believe and could not have reasonably believed that a person was concealed between the mattress and the box springs.

■ Furthermore, the search was not a proper "search incident to arrest." The record shows that appellant was arrested outside the motel room after he fled. It is unclear from the record whether appellant was brought back into the motel room

after he was caught. The record shows that the officers walked appellant back toward the motel room and that Agent Orrantia and two uniformed officers subsequently entered the room to conduct the search. Even if appellant had returned with the officers and entered the motel room after his arrest, the search would not have constituted a proper search incident to arrest. A search incident to arrest is limited to a search of the person and the area in his immediate control. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *see Vale v. Louisiana,* 399 U.S. 30, 33–34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); *Rogers v. State,* 774 S.W.2d 247, 264 (Tex.Cr.App.), *cert. den'd,* 493 U.S. 984, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989), *overruled in part on other grounds by Peek v. State,* 106 S.W.3d 72, 79 (Tex.Cr.App.2003); *Carrasco v. State,* 712 S.W.2d 120 (Tex.Cr.App.1986). There is no justification for a search incident to arrest to be conducted in any room other than the room where the arrest occurs. *Chimel v. California, supra* at 763–65, 89 S.Ct. 2034. Nothing in the record indicates that the area where the gun was found was in appellant's immediate control.

However, based upon appellant's abandonment of the premises and the property located therein, we find that the trial court did not err in denying the motion to suppress. The issue of abandonment may be raised for the first time on appeal. *McDuff v. State,* 939 S.W.2d 607, 616 (Tex.Cr.App.), *cert. den'd,* 522 U.S. 844, 118 S.Ct. 125, 139 L.Ed.2d 75 (1997). A defendant lacks standing to contest the reasonableness of the search of abandoned property. *McDuff v. State, supra.* Property is considered to be abandoned for these purposes if the defendant intended to abandon the property and if the defendant's decision to abandon the property was made freely and was not due to police

misconduct. *McDuff v. State, supra; Comer v. State,* 754 S.W.2d 656, 658–59 (Tex.Cr.App.1986). "[A]bandonment is primarily a question of intent to be inferred from words spoken, acts done, and other objective facts and relevant circumstances." *McDuff v. State, supra* at 616. The issue is:

> [W]hether the accused voluntarily discarded, left behind, or otherwise relinquished his interest in the property so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.

*McDuff v. State, supra* at 616; *see Comer v. State, supra.*

In this case, appellant voluntarily opened the door to his motel room after talking to Agent Moya on the phone. Upon looking out and seeing the agents, appellant fled. No police misconduct was involved in appellant's decision to flee and abandon the premises. Appellant fled from the motel room in his underwear. When he fled, he left the door ajar. Appellant knew that the federal agents were standing outside and wanted to talk to him. Inside the motel room, appellant left behind illegal drugs in plain view, his clothes, and a murder weapon. Appellant, an illegal alien, was clearly trying to escape and disassociate himself from the motel room and its contents. The circumstances in this case indicate that appellant voluntarily left behind and relinquished his interest in the property, that he had no intent to return, and that he no longer had a reasonable expectation of privacy in the motel room or in the property located in the room. *See Rockett v. State,* 318 Ark. 831, 890 S.W.2d 235 (1994), *overruled in part on other grounds by MacKintrush v. State,* 334 Ark. 390, 978 S.W.2d 293 (1998); *Villarreal v. State,* 708 S.W.2d 845, 849–50 (Tex.Cr.App.1986); *Cherry v. State,* 488 S.W.2d 744, 756 (Tex.Cr.App.1972), *cert.*

*den'd,* 411 U.S. 909, 93 S.Ct. 1538, 36 L.Ed.2d 199 (1973); *see also Abel v. United States,* 362 U.S. 217, 240–41, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960). Thus, the trial court did not err in denying appellant's motion to suppress evidence about the gun. Appellant's first, second, and third points of error are overruled.

■ In his fourth and fifth points of error, appellant contends that the evidence is legally and factually insufficient to support his conviction for murder. In his sixth point, appellant contends that the evidence is factually insufficient to support the jury's finding that appellant did not act in self-defense when he shot the victim. In order to determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt and also could have found against appellant on the self-defense issue beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Jackson v. State,* 17 S.W.3d 664 (Tex.Cr.App.2000); *Saxton v. State,* 804 S.W.2d 910, 914 (Tex.Cr.App. 1991). In order to determine if the evidence is factually sufficient, we must review all of the evidence in a neutral light and determine whether the evidence supporting guilt is so weak as to render the conviction clearly wrong and manifestly unjust or whether the evidence supporting guilt, although adequate when taken alone, is so greatly outweighed by the overwhelming weight of contrary evidence as to render the conviction clearly wrong and manifestly unjust. *Vasquez v. State,* 67 S.W.3d 229, 236 (Tex.Cr.App.2002); *Goodman v. State,* 66 S.W.3d 283 (Tex.Cr.App. 2001); *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Cr.App.2000); *Cain v. State,* 958 S.W.2d 404 (Tex.Cr.App.1997); *Clewis v.*

*State,* 922 S.W.2d 126 (Tex.Cr.App.1996). In this case, we will reverse if the evidence supporting guilt is so weak or if the jury's rejection of the self-defense evidence is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Shaw v. State,* 995 S.W.2d 867 (Tex.App.-Waco 1999, no pet'n); *Reaves v. State,* 970 S.W.2d 111, 116 (Tex.App.-Dallas 1998, no pet'n); *Hernandez v. State,* 938 S.W.2d 503, 512 (Tex.App.-Waco 1997, pet'n ref'd).

The record shows that the victim was shot six times at close range in a small men's restroom at a bar. The victim had been shot by someone standing in or near the doorway leading from the bar into the restroom. Although there were no eyewitnesses who came forward, appellant subsequently confessed to the shooting. Appellant signed two voluntary statements. In the first one, appellant stated that, shortly prior to the shooting, he and the victim had had an argument after appellant told the victim he did not have any cocaine. Appellant stated that the victim followed appellant outside and, from a car, showed appellant what appellant thought was a gun. The victim then put it back into the car and walked toward appellant. With "his hand on his waist like telling [appellant] that he had a gun," the victim told appellant "that he was going to pay for it." The victim went back inside, and appellant followed. At some point, appellant was going to go into the men's restroom, but he decided not to because the victim "was going to follow" appellant. Subsequently, the victim went into the men's restroom. Appellant entered the men's restroom while the victim was in there. Appellant stated that the victim was leaning against the wall and made a motion "like he was bringing out a gun." According to appellant, that is when he shot the victim "more than two times." Appellant also stated that he knew the victim by sight because a

member of the victim's family had killed appellant's brother-in-law at the same club in the same restroom in 1995. In his second statement, appellant stated that the victim followed appellant outside two times and that the victim told appellant twice that he was going to kill appellant. Appellant stated that he shot the victim because he was scared that the victim was going to kill him. He also stated that he shot the victim "three times" and that he got the gun from a friend. The weapon found in the motel room that had been occupied by appellant was positively identified as the murder weapon. No weapons were found on or near the victim.

We hold that the evidence is both legally and factually sufficient to show that appellant committed the offense of murder as charged in this case. Furthermore, based on the crime scene, the number of shots appellant fired, the fact that appellant followed the victim into the restroom, and the victim's lack of a weapon, we hold that a rational jury could have found against appellant beyond a reasonable doubt on the self-defense issue and that the jury's rejection of the self-defense evidence was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. The fourth, fifth, and sixth points of error are overruled.

The judgment of the trial court is affirmed.